[Hornthall, Whitehead, Weissman & Co. v. Schonfeld.[

# Hornthall, Whitehead, Weissman & Co. *v.* Schonfeld.

*Bill in Equity by Creditors to set aside Fraudulent Conveyances.*

1. *Sale of goods by insolvent debtor to creditor; validity as against other creditors.*—A sale of his property by an insolvent debtor, at a fair and adequate price, in absolute payment of an honest debt, without reserving any benefit whatever to himself, will be sustained by the courts as a valid exercise of his right of preference, although made with a fraudulent intent on his part, of which the purchasing creditor was cognizant.

2. *Same; fraudulent purchase of goods by insolvent debtor, and subsequent transfer.*—When an insolvent debtor obtains goods on credit by misrepresentation or fraudulent concealment of his condition, the seller may disaffirm the sale, and reclaim the goods, as against the fraudulent purchaser, or any one claiming under him with notice of the fraud ; but he can not maintain a bill in equity to set aside a subsequent transfer of the goods on account of such fraud, when the transfer was made in absolute payment of an honest debt, a fair price allowed for the goods, and no benefit reserved to the insolvent debtor.

APPEAL from the Chancery Court at Mobile.

Heard before the Hon. JOHN A. FOSTER.

The bill in this case was filed on the 7th December, 1883, by the several appellants, as creditors of Sigmund Vogel, deceased, against Mrs. Caroline Schonfeld, Henry Bernstein, and others ; and sought, principally, to set aside a conveyance of his stock of goods made by said Vogel to Mrs. Schonfeld and said Bernstein, on the ground that it was fraudulent as against the complainants and other creditors, to make the said defendants account for the proceeds of sale of such goods as they had

disposed of, and to have the residue subjected to sale for the satisfaction of the complainants' debts. On final bearing, on pleadings and proof, the chancellor dismissed the bill ; and his decree is now assigned as error.

G. L. SMITH, for the appellants.—(1.) S. Vogel, while insolvent, bought goods from complainants on credit, under false representations of solvency ; a large part of the goods so purchased being afterwards conveyed by him to Bernstein and Mrs. Schonfeld, who were cognizant of all the facts at the time the conveyance was executed. That this was an actual fraud perpetrated on the complainants by Vogel, is settled by the adjudged cases.—*Loeb & Bros. v. Flash Brothers*, 65 Ala. 538; *Loeb & Bros. v. Peters & Brother*, 63 Ala. 249 ; *Smith v. Sweeney*, 69 Ala. 527 ; *Donaldson v. Farwell*, 93 U. S. 633. A purchase of these goods, by a person having knowledge of the facts, is also void for actual fraud.—Authorities above cited ; also, *Lehman, Durr & Co. v. Kelly*, 68 Ala. 192. Bernstein and Mrs. Schonfeld knew of these fraudulent purchases by Vogel, and that the goods so purchased by him were part of the stock conveyed to them by him ; and they are chargeable with participation in Vogel's intentional fraud. If the conveyance was intentionally fraudulent as to one creditor, it is void as to all ; and being fraudulent in part, by reason of an actual intent to hinder, delay, and defraud creditors, the entire conveyance is void.—*Lehman, Durr & Co. v. Kelly*, 68 Ala. 203 ; *Tatum v. Hunter & Thomas*, 14 Ala. 557 ; *Wiley, Banks & Co. v. Knight*, 27 Ala. 349 ; *Gordon, Rankin & Co. v. Tweedy*, 71 Ala. 213. When a debtor, though insolvent, sells his own property in payment of an honest debt, no fraud can exist, for it is his duty so to apply it (*Crawford v. Kirksey*, 55 Ala. 282); but this principle can not be invoked by his fraudulent grantees, against the creditors whom he has defrauded, and who have a right to pursue and recover the goods obtained from them by his fraud. (2.) As against the complainants' existing debts, the burden of proving the *bona fides* of the conveyance was on the defendants.—*McCain v. Wood*, 4 Ala. 258 ; *Br. Bank at Decatur v. Kinsey*, 5 Ala. 9 ; *McCaskle v. Amerine*, 12 Ala. 17 ; *Falkner v. Leith & Jones*, 15 Ala. 9 ; *Dolin v. Gardner*, 15 Ala. 758 ; *Gordon, Rankin & Co. Tweedy*, 71 Ala. 212 ; *Lipscomb v. McClellan*, 72 Ala. 159 ; *Buchanan v. Buchanan*, 72 Ala. 57 ; *Hamilton v. Blackwell*, 60 Ala. 547 ; *Pickett v. Pipkin*, 64 Ala. 524. The conveyance being between near relatives, the rights of creditors are jealously guarded, and some proof of the disposition of the money by the debtor must be made.—*Harrell v. Mitchell*, 61 Ala. 278 ; *Hubbard v. Allen*, 59 Ala. 296 ; *Mar-*

[Hornthall, Whitehead, Weissman & Co. v. Schonfeld.]

*shall v. Croom,* 60 Ala. 128 ; *Barnard v. Davis,* 54 Ala. 574 ;
*Thames & Co. v. Rembert,* 63 Ala. 561; *Vincent v. State,*
74 Ala. 274. It appears that part of the consideration was
debts amounting to $7,500, for money obtained by Vogel
within one month prior to the conveyance, $3,500 within two
months, and $2,500 within four months; and no effort is made
to show what Vogel did with this money, although the de-
fendants are in possession of all his books and papers. An-
other item of the consideration is an alleged debt of $10,000
due to Mrs. Schonfeld, but no account of items is produced.
*Enders v. Swain,* 8 Dana, 103 ; *Harvey v. Nugent,* 13 Wisc.
283. If any part of this consideration, even as to one of the
grantees, was fictitious, it vitiates the whole conveyance.
*Seaman v. Nolan,* 68 Ala. 463. When the conveyance was
executed to Bernstein and Mrs. Schonfeld, Vogel was indebted
more than $40,000, by notes on which their names appear as
indorsers ; and though they now repudiate these indorsements,
and denounce them as forgeries, the evidence shows that they
were made by Vogel with their knowledge and consent, and as
part of a joint scheme to defraud his creditors. The record
abounds with proof of other badges of fraud.

OVERALL & BESTOR, *contra.*—The validity of the sale at-
tacked in this case is conclusively established, when tested by
the principles laid down in several late decisions of this court.
The property of an insolvent debtor has been devoted to the
payment of honest debts, at a fair and adequate price, and no
reservation of a benefit to the debtor. These concurrent facts
rebut all inferences of fraud, and impart validity to the con-
veyance as an allowable preference.—*Hodges Bros. v. Cole-
man & Carroll,* 76 Ala. 103 ; *Meyer v. Sulzbacher,* 76 Ala.
121 ; *Crawford v. Kirksey,* 55 Ala. 295. This is no new
doctrine, as shown by the numerous cases cited in these decis-
ions, through the principle could not often be invoked while a
uniform system of bankruptcy was in operation. See, also,
*Covanhovan v. Hart,* 21 Penn. St. 495 ; *Clements v. Moore,*
6 Wall. 312 ; *Estwick v. Cailland,* 5 T. R. 420. If there was
fraud in Vogel's original purchase of the goods, and the de-
fendants bought with knowledge of that fraud, the vendors
might have disaffirmed the sale, and recovered the goods by
action at law.—*Loeb Brothers v. Peters & Brother,* 63 Ala.
243 ; *Loeb v. Flash Brothers,* 65 Ala. 526. But the theory of
such action at law is, that the vendors have never parted with
the legal title to the goods, or, at least, that the legal title be-
comes again vested in them on their disaffirmance of the sale.
In this case, the complainants sue as creditors of Vogel, and
thereby affirm and ratify his purchase; and they complain of

alleged fraud in the sale of goods purchased from other persons, not parties to these proceedings.

SOMERVILLE, J.—The main purpose of the bill is to set aside, as fraudulent, the transfer of a stock of merchandise made by one Vogel to the defendants, Bernstein and Schonfeld, and by them subsequently sold to one Spira. Two other transfers made by Vogel about the same time are also attacked; but the principle involved in each transaction being the same, we propose to confine our discussion chiefly to the first mentioned.

The theory of the bill is, that Vogel, being insolvent, purchased a considerable portion of this stock of merchandise from the complainants, under the false pretense of being solvent, which conferred on the complainants the right to rescind the sale; that Vogel sold the property to the defendants Bernstein and Schonfeld, and they to Spira, for the purpose of fraudulently depriving them of this right; and that all of the defendants bought with notice of the alleged fraud, and were, therefore, participants in it. This state of facts, it is argued, vitiates the entire transaction, as a transfer made by Vogel with the intent to hinder, delay, or defraud the complainants, and other creditors, of their lawful rights in the premises.

We propose to consider the case upon the assumption, urged by appellants' counsel, that this phase of it is fully supported by the testimony, and that each of the defendants purchased the property with a knowledge of facts sufficient to put them on inquiry as to the supposed fraud, and that they were all chargeable with notice of it.

The bill seeks to set aside this sale of the merchandise and other property, and to condemn the property to the satisfaction of the debts due to complainants from Vogel's estate, he being since deceased.

It is our opinion that the bill is clearly without equity.

The principle may now be regarded as settled law in this State, that when an insolvent debtor makes a sale of his property in absolute payment of an honest debt, and at a fair and adequate price, without reserving any benefit whatever to himself, the sale will be sustained by the courts as a valid exercise of the debtor's right of preference, although he may have made the sale with a fraudulent intent, of which the purchaser was cognizant.—*Meyer v. Sulzbacker*, 76 Ala. 121; *Hodges v. Coleman, Ib.* 103, 120. The act itself being authorized by law, the fraudulent intent does not vitiate it.

An examination of the testimony in this case, with a proper consideration of the oral and printed arguments of counsel, satisfies us that Sigmund Vogel, at the time of the transfer in

question in December, 1883, was justly indebted to the defendant Bernstein in the sum of about ten thousand dollars, due for moneys paid out and lawfully assumed to be paid at the debtor's request; and that he owed the defendant Mrs. Schonfeld not less than seventeen thousand dollars for moneys loaned by her to Vogel, and for debts of his assumed at his request, and for the payment of which she was liable. The two sums thus aggregate about twenty-seven thousand dollars. The evidence is, moreover, satisfactory in support of the further fact, that the entire property sold by Vogel to these two creditors, including the land conveyed to Mrs. Schonfeld, was not worth so much as the price paid, and no benefit was reserved to the vendor in making the sale.

It is insisted, however, that the case made by the bill does not fall within the influence of the foregoing general rule. The argument, as we have said, is, that the complainants had an option to rescind the sale made by them to Vogel, of a portion of this stock of merchandise, on account of his fraud in the purchase, and that he and the defendants colluded together to deprive complainants of the right to exercise such option by the transaction of sale and purchase here attacked. The vice of the argument seems, among other things, to lie in the assumption, that a transaction which is lawful when consummated, may be rendered unlawful retrospectively by a mere potentiality, the future happening of which depends upon the exercise of a discretion by a third person, whose rights are incidentally involved. The purchases made by Vogel from the complainants and others of his creditors were in no sense void. They were only voidable at the option of the several vendors, seasonably and severally expressed. The legal title and the property in the goods were vested in Vogel as purchaser, with the legal right to transfer a perfect title to any vendee purchasing for value, and without notice of the original vendor's right of rescission or disaffirmance.—*Hornthall v. Spira,* 77 Ala. 137. Unless this right or option should be exercised, Vogel's right to sell was as perfect as if he had paid the cash for the property, and owed nothing on it. A failure or refusal to disaffirm was precisely tantamount to an election to affirm, and the exercise of the latter option would cure every possible defect in title. The right of disaffirmance, in other words, was a dormant right, and could only be quickened into life by being brought into exercise; and if never thus quickened into life, it was as if it had never legally existed.

The rights of the complainants, as to any property sold by them to Vogel, could be asserted at law, if they existed at all. Their remedy was adequate, upon the supposed facts,

[Hines v. Duncan.]

either by a recovery in detinue or trover, upon a disaffirmance of the sale, or possibly by an action on the case. This is upon the hypothesis, that the purchasers had notice of the complainants' rights. If they did not, the complainants' right to disaffirm was extinguished, and they had no remedy at all. Nor would it seem reasonable, or conscionable, that complainants should derive any benefit from the facts that other creditors of Vogel than themselves had been deprived of their option to rescind sales made to him by them, especially when the vendors themselves make no complaint of the fact, and it does not appear that they elected to exercise such option. The complainants are in no wise injured by this. Even were it a legal fraud, it would confer on them no right of action, for it works them no damage.

There is yet another objection to the equity of the bill. The bill denies Vogel's right to the property in question, by reason of his alleged fraud in the purchase of it. It seeks at the same time to condemn the property as Vogel's. Nor do the complainants seek to disaffirm the sale made by them to him. If they had done so, they would, by this very act of rescission, have elected to cancel the sale, and, by reclaiming their goods, would *ipso facto* have ceased to be creditors. They, therefore, by their bill necessarily affirm such sale, and thus waive their option. They can not do this, and claim to be defrauded, because the very idea of the fraud complained of consists in the continued existence of the right to exercise their option.

These facts, in our opinion, involve no such fraud as would authorize a court of chancery to intervene for the purpose of setting aside the sales which are attacked in this proceeding.

We discover no error in the decree of the chancellor, and it is accordingly affirmed.

