THE LOMACK HOME FOR THE AGED AND INFIRM COLORED PEOPLE OF MINNESOTA, NEBRASKA AND IOWA, Plaintiff, AND IOWA LOAN AND TRUST COMPANY, NELSON ROYAL, T. E. B. HUDSON, A. W. HUDSON, C. C. LOMACK, AND F. H. MALLEY, Receiver, Interveners, Appellees, v. THE IOWA MUTUAL TORNADO INSURANCE ASSOCIATION OF DES MOINES, IOWA, Appellant.

**Admission of evidence:** REVERSIBLE ERROR. Ordinarily a cause will not be reversed because of the refusal to strike irresponsive testimony, where the same has a legitimate bearing on the issues: As in this action upon a tornado policy of insurance the admission of evidence concerning the character of the storm which

did the damage, though not directly responsive to the inquiry or relating to the particular damage involved, and even though the witness could not identify the precise blast of the wind which destroyed the property in suit, was not reversible error.

**Same:** CONCLUSION OF WITNESS. A witness who visited the scene of a storm immediately after its occurrence may testify to the damage done, though he did not actually see it accomplished and although his testimony in that respect is in the nature of a conclusion.

**Insurance:** DAMAGES: EVIDENCE. An insurance company can not complain of the admission of evidence as to the difference in value of a building immediately before and after its injury, on the theory that as it was not a total loss the measure of damages was the cost of restoration less depreciation from age and wear, where it afterward objected to evidence of the damage offered in accordance with such objection; and especially where the abstract did not disclose what measure of damage was submitted to the jury.

**Same:** COMPETENCY OF WITNESS. A witness shown to have been familiar with the construction of buildings and estimating the cost is competent to testify to the cost of repairing a building damaged by wind.

**Verdict:** CONFLICTING EVIDENCE: CREDIBILITY. A verdict upon conflicting evidence will not be disturbed on appeal, the credibility of the witnesses being for the jury to determine.

**Judgments:** APPLICATION OF PROCEEDS: ATTORNEY'S FEES. In this action upon an insurance policy in which plaintiff's mortgagee intervened, the court properly applied the proceeds of the judgment to the satisfaction of plaintiff's attorney's fees, then to payment of the mortgages in the order of their priority.

*Appeal from Polk District Court.*—HON. HUGH BRENNAN, Judge.

TUESDAY, DECEMBER 12, 1911.

ACTION at law upon a policy of insurance issued to the plaintiff against loss or injury by tornado or windstorm to a certain church building. The defendant denies liability. The interveners are mortgagees, holding liens upon the

property, and asserting a right to share in the proceeds of the insurance. Judgment for plaintiff, and interveners and defendant appeal.—*Affirmed.*

*Dunshee & Haines* for appellant.

*A. H. McVey* for appellee, Lomack Home.

*Dudley & Coffin* for appellee, Iowa Loan & Trust Co.

*Royal & Royal* for appellee, Nelson Royal.

*E. P. Hudson* for appellees, T. E. B. Hudson, A. W. Hudson, and F. H. Malley, Receiver.

WEAVER, J.—The appellant concedes the issuance of the policy, and that it was outstanding and in force at the date of the alleged loss, and that the title to the insured property was in the plaintiff. It further admits that the interveners severally held mortgage liens upon the building, and that defendant had consented to the creation of such liens, and had undertaken to pay the indemnity to them, in case of loss, as their several interests might appear. Defendant further alleges that the representative of the plaintiff who applied for and obtained the insurance falsely represented and warranted the building to be in good repair, and generally to be in an insurable condition, which representations were believed and relied upon by the defendant in issuing said policy; but that in truth and in fact said building was then badly dilapidated and in a condition of ruin and decay, and, had such condition been truthfully made known, the application for insurance would have been denied, and the policy would not have been issued. Though the abstract discloses no denial that the building was injured in the manner alleged by plaintiff, the case seems to have been tried as if

that issue had been raised, and it will be so treated for the purposes of this appeal.

I. Error is assigned upon the admission and rejection of evidence. As these are stated in fourteen different propositions involving nearly thirty distinct specifications of alleged error, it will not be practicable to here discuss them separately. We will endeavor, however, to give attention to those which most directly affect the real merits of the case, and our holdings with respect to them will sufficiently indicate our views concerning those not specifically treated.

*1. ADMISSION OF EVIDENCE: reversible error.*

One Lomack, who was pastor in charge of the church at the time of its injury, having testified that on the night in question there was a "terrible windstorm and rain," between nine and ten o'clock, and that "wind took down the tower," and that "it appeared that the storm struck this tower, and as it fell it struck upon and broke through the roof," he was made to say, upon cross-examination, that on the evening in question he was visiting at a place within a block of the church, when some person came in, reporting the injury, and he went immediately to the place, and saw the alleged effect of the storm. He was further allowed to say: "There was lightning and thunder and rain, and there was a hard wind; blew our sheds away, and tore up trees and everything else." The defendant moved to strike this answer as not responsive, and to strike the direct testimony of the witness as to the injury to the building by the storm, because he was not personally present when the tower fell, and could speak only from hearsay. These motions were overruled. While the answer as to the effect of the wind upon the sheds and trees was not directly responsive to the question asked, and might properly have been stricken on that ground, the refusal so to do was not an error of such gravity as to call for a reversal. The testimony was undoubtedly competent and material as related to the main controversy. The fact that the wit-

ness could not say that the particular blast of wind which prostrated the sheds and tore up the trees was identical with the one alleged to have injured the church affords no ground for its rejection. It has a direct bearing upon the disputed question as to the force and energy of the storm. The fact that the loss complained of was the effect of the storm may be established by circumstantial evidence, as well as by direct testimony, and evidence of the destruction of which the witness speaks is admissible for that purpose. To say the least, it is very doubtful if a reversal will be justified in any case because of the trial court's refusal to strike an irresponsive answer, where the matter testified to has a legitimate bearing upon the issue being tried. If there be any exception to this rule, it must be because the record discloses peculiar or unusual conditions, none of which are apparent in the case at bar.

Nor do we find any error in the ruling of the court, refusing to strike the direct testimony of this witness. Taking his direct and cross-examination together, it is apparent that the witness was upon the scene immediately after the tower had fallen; and while his answers partake in some degree of conclusion, as well as of fact, they were not, in our opinion, incompetent. Such conclusions are not always inadmissible. If, immediately after a tornado or severe wind, a witness goes out and sees the visible track of the storm, and discovers therein trees and buildings which had been standing but a few minutes before now lying prostrate and broken upon the ground, he is not indulging in mere conjecture or in repetition of hearsay when he assumes to swear that such buildings or trees were blown down, even though he did not see them fall, and is unable to say at what precise instant of the gale they gave way to its impact. So long as the weight and value of such testimony is left open to the test of cross-examination, it is scarcely possible that prejudice can result from its admission.

*2. SAME: conclusion of witness.*

Appellant further complains of the admission of evidence of the difference in the value of the building immediately before and immediately after the injury.    This
is said to be erroneous, because, the
building not being a total loss, the true
measure of damages is the cost of restoration or replacement, subject to depreciation on account of age and wear; but, when plaintiff, accepting the theory of the objection, proceeded to ask the witness what it would cost to restore the building to its condition prior to the storm, appellant seems to have changed front, and insisted that this was *not* the proper measure.    In argument on appeal, this objection is withdrawn, but the trial court did not have the benefit of the withdrawal.    As the appellant has not seen fit to include in its abstract all the instructions given, we are not informed just how the court steered its way between the Scylla and Charybdis of the defendant's objections, but, in the absence of a clear showing to the contrary, we are bound to presume that it navigated the strait successfully.    Appellant does quote a paragraph of the charge in which the court directs the attention of the jury to the issue joined upon the alleged cause of the injury to the building, and adds that if the fact be found as claimed by the plaintiff it will be entitled to recover "whatever amount of damages you find resulted from the collapse."    There is no attempt in this instruction to define the measure of recovery—a subject which doubtless had the attention of the court in its appropriate place in the charge.    Indeed, reference to an abstract, filed by the interveners, does disclose that the court directed the jury in this respect substantially in line with the theory now contended by the appellant.

It is further argued that the witness, when interrogated upon this point, was not shown to be competent to testify. He had said that for fifteen years he had been constructing from one to ten buildings every year, and was familiar

3. INSURANCE: damages: evidence.

with prices of work and material, and was "good" at esti-
mating costs and expenses in matters of build-

4. SAME: com-
petency of
witness.

ing; and this, we think, was sufficient to
permit the introduction of his testimony. Its
weight and value were for the jury. The same may be said
as to the testimony of another witness, who had not exam-
ined the building until the morning of the trial, and could
not, of course, tell what changes had occurred in its condi-
tion between the time of the storm and of his examination.
He was a practical contractor and builder, whose com-
petency is not questioned; and, while the changes and decay
which may have supervened after the storm would natur-
ally require the jury to scale down his estimate for the
purposes of fixing plaintiff's damages, it would not neces-
sarily require the exclusion of his testimony.

Other exceptions are taken to rulings on matters of
evidence, but, without taking further time for their discus-
sion, we may say that on examination of the record with
respect to each we find no error.

II. The point most earnestly contended for in argu-
ment is that the testimony is insufficient to sustain a ver-
dict in plaintiff's favor. Nothing can be gained for either
party by an attempt to set out the testimony.

5. VERDICT: con-
flicting evi-
dence: cred-
ibility.

Issues of fact are rarely so identical in cir-
cumstance that a decision of one is of any
real value as a precedent in any other case, and this is
particularly true in actions at law. Different juries may
reach opposite conclusions on the same state of facts, and
neither verdict be vulnerable to an attack of this kind.
The case made by the plaintiff in this instance is by no
means a strong one, and defendant made a formidable
showing in resistance of the demand sued upon; but we
think the showing made in support of that demand was
not so clearly devoid of merit as to permit the court to
set aside the verdict. The credibility of the witnesses is
for the jury alone. Without disregarding this fundamental

rule, we can not say the jury transgressed its powers in finding the plaintiff entitled to a recovery. The objection to the sufficiency of the evidence must therefore be over-ruled.

III.   The jury returned a verdict in favor of plain-tiff for the sum of $2,000, with interest from July 29, 1909.   Thereupon plaintiff filed a motion for a distribution

6. JUDGMENTS: of the fund represented by said recovery in
application of the following order:   To A. H. McVey, for
proceeds: at-
torney's fees. services as plaintiff's attorney in the case, $325, and that the remainder be used in repairing and restoring the injured church building.   This motion was resisted by the interveners, who objected to the allowance of an attorney's fee from the proceeds of the recovery, and objected to the application of such fund to the repair of the building.   After hearing testimony, the court entered judgment upon the verdict, allowed an attorney's fee of $315 in favor of McVey, and ordered the remainder applied, first, to the payment of the claim of the Iowa Loan & Trust Company's mortgage of $1,200, and interest, and, second, to the payment *pro tanto* of the claim of Nelson Royal, who was the second mortgagee.   All the parties, except the Loan & Trust Company, appeal from the order of allow-ance in favor of McVey.   It is contended by the interveners that they severally had independent rights of action upon the insurance policy, employed independent counsel, and are in no manner responsible for the services rendered by McVey.   The plaintiff also, while accepting the benefits of McVey's services, repudiates his claim, and denies that he was employed to conduct the suit.   The defendant advances the theory that it is entitled to be subrogated to the rights of the mortgagees, whose claims it pays, and the fund ought not to be reduced by payment of attorney's fees.

The record discloses not the slightest ground for the plaintiff's appeal from this order.   Mr. McVey brought the suit and conducted the litigation in its behalf to the end,

and, as against his client at least, had both legal and moral right to demand his payment from the recovery secured by him. It may also be said of the defendant's position in this matter that, having denied liability on its policy and resisted the suit brought to enforce collection, it can not now be heard to claim an affirmative benefit from the judgment so recovered against itself, undiminished by the expense incurred for counsel fees in compelling it to perform its contract. Indeed, it is not at all clear to the court how, in any event, the doctrine of subrogation cuts any figure in the case. Whether the money be paid to plaintiff or to the interveners, defendant does no more than perform its contract obligation, and has no right to demand reimbursement from any one sharing in the distribution of the fund. Nor do we think the interveners can justly complain of the allowance of attorney's fees. It may be true that they could have brought independent actions upon their several claims, but they did not. They waited several months after the loss occurred without moving to collect the insurance, until the plaintiff, acting as it had the right, if, indeed, it was not in duty bound to do, brought action in its own name, when they availed themselves of the proceedings thus begun by intervening therein. They did not and could not thereby displace the plaintiff or its counsel. They could, if they saw fit, unite with plaintiff and assist in prosecuting the claim; but they could not make the verdict returned and the judgment entered thereon anything less than a recovery for the plaintiff. The court could and did, upon their demand, recognize their rights as lienholders, and ordered the sum so recovered, less the expenses of such recovery, applied to the payment of their liens in the order of their admitted priority.

In effect, the suit was brought by the plaintiff for the benefit of the mortgagees, and it is well established that in actions lawfully prosecuted by one person for the benefit of another he may, for that purpose, employ counsel, whose

reasonable compensation is a charge upon the proceeds of a recovery so obtained. *Abbott & Kniseley v. Downer*, 54 Iowa, 687. There was therefore no error in the order of distribution as entered by the trial court. Interveners have obtained the full proceeds of the insurance, subject only to the reasonable expense of its collection, and they suffer no wrong in the refusal of their demand for more.

We find no reason for disturbing the judgment below in any respect, and it is upon each and all of the several appeals—*Affirmed.*