## Harris's Appeal.

## Jacoby's Appeal.

Argued April 27, 1936. Before KEPHART, C. J., MAXEY, DREW, LINN, STERN and BARNES, JJ.

*William A. Schnader,* with him *Gilbert W. Oswald* and *Myron Jacoby,* for appellants.

*James McMullan,* with him *Drinker, Biddle & Reath,* for appellee.

OPINION BY MR. JUSTICE MAXEY, June 26, 1936:

The question presented here is this: Has the attorney for the owner of real estate taken in condemnation proceedings any claim upon the award of compensation therefor, for the reasonable value of his services and costs of litigation, as against the mortgagee of the property?

One of the appellants, Grace Wilson Harris, was the owner of 2121 and 2134 Vine Street, Philadelphia. Ap-

pellee, the Corn Exchange National Bank & Trust Co., held mortgages on both properties, securing a debt of Mrs. Harris upon which the balance due is $109,379. Pursuant to an ordinance, the city in 1934 condemned the properties for use as an addition to the Parkway, located therein. Mrs. Harris employed the other appellant, Myron Jacoby, Esq., to represent her in the condemnation proceedings. She sent him a letter stating: "It is understood and agreed between us that your charges for all legal services in this connection will be ten per cent of the gross amount collected from the city for this condemnation." The mortgagee bank had notice of the proceedings, and of the fact that Mrs. Harris, the owner, had retained Jacoby to represent her in the matter. It made no objection (of course, it could not do so successfully), nevertheless, it kept silent during the entire proceedings and permitted Attorney Jacoby to bear the entire professional burden during the condemnation proceedings. The success of his efforts clearly redounded to its gain. A board of view was appointed and held hearings, at which Jacoby appeared for Mrs. Harris and produced expert testimony as to the value of the properties. In due course, compensation was awarded the owner in the amount of $67,000 for both properties, which is less than the mortgage debt. The award became final, but before it was paid by the city the mortgagee intervened and filed petitions to have the whole award paid to it as lien creditor. The lower court granted the petitions and awarded the entire fund to the bank, permitting Jacoby to intervene and file exceptions to the dismissal of his claim to ten per cent of the award, as counsel fee, and his reasonable costs and expenses of conducting the litigation against the city. It now appears that Mrs. Harris is insolvent, so that no hope can be entertained that she will be able to reimburse Jacoby or pay his counsel fee. Appellee does not claim that ten per cent of the award, as agreed upon by Mrs. Harris and Jacoby, is more than the reasonable value of his

services. The exceptions of both Mrs. Harris and Jacoby were overruled, and they have appealed.

Appellee's position is that Jacoby was attorney for Mrs. Harris and must look to her for his fee and costs. It insists that its lien on the fund, by virtue of its mortgage, is superior to the claim of anyone through or under Mrs. Harris, the owner. It does not deny, however, that the owner of the property was the party entitled to claim compensation for its taking, and to initiate and conduct the proceedings before the jury of view. In *Phila. & Reading R. R. v. Penna. Schuylkill Valley R. R.*, 151 Pa. 569, 575, 25 A. 177, it was said: "It is the undoubted right of the owner to institute and maintain proceedings for the recovery of the damages resulting from the appropriation of its land and to have the full benefit of the same." To the same effect is *Knoll, Admr., v. N. Y., etc., Ry. Co.*, 121 Pa. 467, 15 A. 571. Our decisions establish that in carrying on this type of litigation and securing a proper award the property owner sustains a trust relation as to creditors possessing liens on the property, sufficient to entitle the latter to equitable aid in enforcing such liens upon timely intervention in the proceedings. In *Knoll, Admr., v. N. Y., etc., Ry. Co.*, supra, at pages 474 and 475, we said: "The right of action for . . . damages [in condemnation proceedings] is in the owner. . . . If the owner should refuse to move, or should act fraudulently, the courts upon a proper application by lien creditors would no doubt treat him as a trustee and require him to do, or permit his creditors to do in his name, what might be necessary to an adjustment of the damages, and impound the money for those equitably entitled to receive it. . . . The claim asserted, however, would have been that of the owner, and the damages when settled would have been paid out under an order of the court. . . . In these cases, the courts seem to have regarded the owner as a trustee for his lien creditors, and a recovery in his name as one to be controlled for their benefit." To similar effect is *Woods Run Avenue*,

43 Pa. Superior Ct. 475. The owner may even release damages against the municipality which takes the property for public use, so long as this is not in fraud of the mortgagee: *Shields v. City of Pittsburgh,* 252 Pa. 74, 97 A. 124. For all practical purposes, in the case before us, the City of Philadelphia stands ready to pay the award to those rightfully entitled to it, as the court shall direct. It must be distributed under equitable principles: *Irons v. Pittsburgh,* 64 Pa. Superior Ct. 126, 130.

Under these decisions it cannot be said that appellee bank did all that it could to enhance the fund now to be distributed, by waiting until the litigation between the owner and the city had terminated, to step in at the last moment and claim the entire proceeds, just prior to payment, without bearing any of the labor and expense of producing the fund. If it thought its rights prejudiced, there was no reason why it could not intervene at the commencement of the condemnation proceedings, averring its claim as lien creditor, and demanding a right to be heard. Upon a proper application it would have had the right to appear by counsel and present evidence as to the value of the property taken, since it had the primary interest in the property. It is with poor grace that it now presses its claim to the full amount of the award, having held aloof when its interest was imperiled and was being protected by another party in interest seeking (but unsuccessfully) to salvage her equity in the property. If a principle in law or equity can be found to sustain an award of reasonable counsel fee and costs to the owner's attorney, who litigated the compensation dispute and whose services helped produce the fund, it ought to be applied.

Appellants do not contend that Jacoby has an ordinary common law or *retaining* lien upon the fund which the city is now prepared to pay, and which has been substituted for the condemned land. Such a lien is dependent upon possession by the attorney and binds only money, papers or other property in his hands: *Dubois's*

*App.,* 38 Pa. 231; *Quakertown & Eastern R. R. Co. v. Guarantors' Liability Indemnity Co.,* 206 Pa. 350, 55 A. 1033; 2 Thornton on Attorneys at Law, 969, section 572. On the other hand, the right of an attorney to a *charging* lien upon a fund in court or otherwise applicable for distribution on equitable principles, which his services primarily aided in producing and to which, by agreement with his client, he is to look for compensation, has long been recognized by the authorities. In *Patten v. Wilson,* 34 Pa. 299, where counsel for a judgment creditor was held entitled to the whole amount of the judgment as against his client's attaching creditor, this court referred to the right as an "equitable assignment." In *McKelvy's & Sterrett's Appeals,* 108 Pa. 615, the attorney was termed the "equitable owner," to the extent of the value of his services, of the fund in court produced by his efforts. In that case this court said at page 620: "The fact is found by the auditor and the court that the appellee was to look to this fund for his compensation. Its existence is due in great measure to his professional services. To the extent of the value of those services, then, the fund belonged to him; that is to say, he was the equitable owner thereof to the amount of his fee. When, therefore, it was discovered that the appellant was endeavoring to take the fund out of court by the aid of other counsel, thus ignoring the appellee's claim, the court below did right in laying its hand upon such a proceeding. It was acting as a court of equity; it was administering a fund within its actual grasp, and it was entirely competent to dispose of every question connected with that fund. It had been in the hands of a receiver but the receiver had paid it into court. The allowance of counsel fees touching a fund in equity has always been under the control of a chancellor." In *Weed's Est.,* 163 Pa. 600, 602, 30 A. 278, we said, quoting a syllabus from *Trustees v. Greenough,* 105 U. S. 527: "One jointly interested with others in a common fund and who in good faith maintains the necessary litigation

to save it from waste and destruction and secure its proper application, is entitled, in equity, to reimbursement of his costs as between solicitor and client, either out of the fund itself, or by proportional contribution from those who receive the benefits of the litigation." See also *Freeman et ux. v. Shreve,* 86 Pa. 135; *Seybert v. Salem Twp.,* 22 Pa. Superior Ct. 459.

Other authorities sustain the rule established by our cases. A note in 11 A. L. R. 713, refers to some of them. In 1 Jones on Liens (3d ed.) 132, section 147, it is said: "An attorney may have a special lien upon a fund in court or in the hands of a receiver, recovered by him, and a court of equity, having such a fund in its possession, will protect the attorney in retaining out of it a reasonable compensation for his services." And further, at page 206, section 201a: "An attorney has a lien upon a fund recovered by his aid paramount to the claims of persons interested in the fund of their creditors. The lien in such case exists without the aid of the statute": 2 Thornton on Attorneys at Law states the principle as follows (Page 1022, section 624.): "It is well settled that an attorney is entitled to compensation out of a fund which has been brought into a court of equity by his aid, and to which he looks for payment. Strictly speaking, perhaps, the fund is not actually charged with a lien; indeed, it is rather in the nature of an equitable allowance; but it has the effect of a lien, and is frequently spoken of as such." (Page 975, section 578): "The charging lien, originally, was defined to be the right of an attorney at law to recover compensation for his services from a fund recovered by his aid, and also the right to be protected by the court to the end that such recovery might be effected. Unlike the retaining lien, the charging lien does not depend upon possession, but upon the favor of the court in protecting attorneys, as its own officers, by taking care, *ex æquo et bono,* that a party should not run away with the fruits of the cause without satisfying the legal demands of the attorney by

whose industry those fruits were obtained. . . . Nor is the charging lien a merely passive one, but, on the contrary, it entitles the attorney to take active steps to secure its satisfaction." (Page 978, section 580) : "The doctrine under which the charging lien became effective was established on general principles of justice, and it rests upon the theory that one should not be permitted to profit by the result of litigation without satisfying the demand of his attorney. It has been well described as 'a mere arbitrary exercise of power by the courts; not arbitrary in the sense that it was unjust or improper, but in the sense that it was not based upon any right or principle recognized in other cases.' The parties being in court, and a suit commenced and pending, the courts invented this practice, and assumed this extraordinary power, for the purpose of protecting attorneys in their compensation."

The rule has been applied in the settlement of decedents' estates. Counsel for a trustee is entitled to be paid out of the corpus of the estate, and likewise an attorney for a beneficiary who succeeds in establishing the right of the estate to a fund or specific property, or in protecting the trust *res*. In *Crawford's Est.*, 307 Pa. 102, 110, 160 A. 585, Mr. Justice KEPHART, speaking for this court, said: "There can be no doubt but that Mr. Hastings was entitled to reasonable compensation *(McKelvy's App.*, 108 Pa. 615; *Schwartz v. Oil Co.*, 164 Pa. 415 [30 A. 297] ), and there can be no doubt but that the trust fund is the source from which the money shall be paid. Such is the case when a guardian employs counsel to protect his ward's estate: *Price's App.*, 116 Pa. 410 [9 A. 856]. Also where a trustee employs counsel: *Kennedy's Est.*, 141 Pa. 479 [21 A. 671]; *Hay's Est.*, 153 Pa. 328 [25 A. 822]. See also *Shaffer v. Spangler*, 144 Pa. 223 [22 A. 865]; *Weed's Est.*, 163 Pa. 595 [30 A. 272]. Where all but one of the heirs employ counsel to protect an estate, counsel was held entitled to compensation out of the entire estate: *Francis's Est.*, 5

Kulp 17. Hence, where the fund has been secured for a charitable use through the services of an attorney, he is entitled to recover a fee out of the corpus of the trust estate."

An analogous doctrine is enforced in workmen's compensation cases, securing to the injured employee's attorney, who effects a recovery on his behalf against a negligent third party, payment of reasonable counsel fees and expenses out of the fund recovered, as against the right of the compensating employer to be subrogated to the fund. In *Wilson v. Pittsburgh B. & I. Works,* 85 Pa. Superior Ct. 537, the employer claimed a right to the whole fund, but his claim was denied and the employee's attorney was ordered paid. Speaking of the employee's action for damages, Judge KELLER said, at page 540: "It is well known that such an action does not prosecute itself; that lawyers must be employed and paid; and the question naturally arises by whom are their fees and expenses to be paid. The only interest of the employee in the action is in case the verdict should exceed the compensation payable to him by the employer; it would seem unjust to make him pay the expenses of a successful suit out of his compensation, to the sole benefit of the employer, if the verdict did not exceed such compensation. The interest of the employer, on the other hand, is immediate reimbursement up to the amount of the compensation paid and relief from future payments, and unless the verdict is in excess of the compensation payable by him, he alone is benefited by the recovery; just as in this case, every dollar of the net recovery goes to the employer, none to the injured employee. . . . The employer stands in the place of the employee, as respects the fruits of the action against the wrongdoer, to the extent of the compensation paid and payable by him. But the attorney who prosecuted the action and secured the fund is entitled to retain out of the money paid to him in satisfaction of the verdict reasonable compensation for his services in the case and reimbursement of his ex-

penses in connection therewith. The injured employee, as plaintiff in the action, is only entitled to the balance remaining in the attorney's hands after such payment, and subrogation gives to his employer no higher rights than the former possesses. It is only just that the necessary fees and expenses incurred in creating the fund should be first deducted out of the fund, rather than charged against the employee for the relief of the party primarily benefited by the action." The ruling in this case was approved by us in *Ellis v. Atlantic Refining Co.,* 309 Pa. 287, 163 A. 531.

The federal courts apply a like principle in receivership cases, where it has long been established: *Trustees v. Greenough,* supra; *Buell v. Kanawha Lumber Corp.,* 201 Fed. 762; *Carbon Steel Co. v. Slayback et al.,* 31 Fed. (2d) 702.

Nor do we think any of our previous decisions militate against this view, where, as stated in *Quakertown & Eastern R. R. Co. v. Guarantors' Liability Indemnity Co.,* supra, at page 354, and, as is the case here, "the fund is the product of the attorney's labors, and he has agreed to look to it solely for compensation." This was not true in that case, and this court said there was "no equitable consideration sufficient to move the conscience of a chancellor to interfere" and that "the claimant had an adequate and complete remedy at law." In *Dubois's App.,* supra, it was admitted that the money to be distributed was a surplus arising on a mortgage sale, not brought into court through the attorney's agency. In *Patrick v. Bingaman,* 2 Pa. Superior Ct. 113, there was no fund at all, until paid into court, not as a result of the efforts of counsel but by consent of all parties.

In 6 C. J. 782, section 394, the equitable claim of the attorney is stated as follows: "While there is, strictly speaking, no lien on any fund which is within the custody or control of the court; yet, where a fund is brought into a court of equity through the services of an attorney who looks to that alone for his compensation, he is re-

garded as the equitable owner of the fund to the extent of the reasonable value of his services, and the court administering the fund will intervene for his protection and award him a reasonable compensation to be paid out of it. . . . This so-called lien extends, however, only to that part of the fund which belongs to those parties whose interests he has represented in the suit. It must also always appear that the services of the attorney operated to secure or collect the fund out of which he claims to be paid."

Under the authorities cited, where the attorney's client, for whom the services were in the first instance rendered, stands on an equal footing with other claimants to the fund, or the latter derive their rights through the owner of the property which gave rise to it, the equitable right of the attorney will be sustained. We will go farther and say that even where a lien creditor, such as the mortgagee in the case before us, has a claim upon the property superior to the owner's, yet, if his interest in the fund created, which the owner is primarily entitled to collect, is substantially identical with that of the owner, and the fund is realized solely through the efforts of the owner's attorney, who agrees to look to the fund for his compensation, the lien creditor must yield his claim to the attorney's reasonable claim for compensation and must yield his claim also to the payment of the legal costs.

There is authority for so holding and the equitable principles referred to sustain it. Of course, where the owner has merely assigned to third parties his interest in the award of damages, this cannot defeat the mortgagee's claim to the whole of it on a valid debt. "It does not lie in the mouth of the owner or his assignees, with notice of the recorded mortgage, to contend that the first mortgagee should be satisfied with an impaired or lessened equity in the mortgaged property": *Sarapin v. Phila.*, 306 Pa. 388, 390, 159 A. 866. Here, however, appellant Jacoby is not a mere assignee, i. e., transferee, of

the fund; his efforts contributed to its creation. He conducted the entire litigation which resulted in the award, without assistance from appellee, the party which, if the decree of the court below stands, will be the sole beneficiary of Jacoby's efforts. It is not denied that his efforts were successful and that they resulted in augmenting the fund realized. The attorney agreed to accept his compensation out of the fund, his client being otherwise unable to reimburse him. The interest of the owner and the mortgagee was identical—to raise as large a fund as possible, so that, as the owner hoped, something would be left for her after paying the mortgagee, and, as the mortgagee hoped, its security interest would be realized in full. The attorney's services were more than desirable; they were essential. If the owner had refused to employ counsel and participate in the condemnation proceedings, presumably the mortgagee would have done so. It would be manifestly unjust to permit the mortgagee to reap all the benefits of the attorney's endeavors and to "get out from under" even the smallest share of the burden which produced the benefits. We will impose on the fund the payment of the reasonable costs of its creation.

In *Lomack Home for the Aged and Infirm, etc., et al. v. Iowa Mutual Tornado Ins. Assn.,* 155 Iowa 728, 133 N. W. 725, the legal situation was similar to the one now before us. Plaintiff sustained a partial fire loss on its building and brought suit against its insurer, being represented by one McVey, who conducted the suit in all its stages and recovered a verdict for the owner. Intervening mortgagees claimed the entire proceeds of recovery, the insurance policy having contained a loss payable clause in their favor. The owner's attorney was, however, awarded reasonable compensation out of the fund. The court said, at pages 735-737: "It is contended by the interveners that they severally had independent rights of action upon the insurance policy, employed independent counsel, and are in no manner responsible for

the services rendered by McVey. The plaintiff, also, while accepting the benefits of McVey's services, repudiates his claim, and denies that he was employed to conduct the suit. . . . The record discloses not the slightest ground for the plantiff's appeal from this order. Mr. McVey brought the suit and conducted the litigation in its behalf to the end, and, as against his client at least, had both legal and moral right to demand payment from the recovery secured by him. . . . Nor do we think the interveners can justly complain of the allowance of attorney's fees. It may be true that they could have brought independent actions upon their several claims, but they did not. They waited several months after the loss occurred without moving to collect the insurance, until the plaintiff, acting as it had the right, if, indeed, it was not in duty bound to do, brought action in its own name, when they availed themselves of the proceedings thus begun by intervening therein. They did not and could not thereby displace the plaintiff or its counsel. They could, if they saw fit, unite with plaintiff and assist in prosecuting the claim; but they could not make the verdict returned and the judgment entered thereon anything less than a recovery for the plaintiff. The court could and did, upon their demand, recognize their rights as lienholders, and ordered the sum so recovered, less the expenses of such recovery, applied to the payment of their liens in the order of their admitted priority. In effect, the suit was brought by the plaintiff for the benefit of the mortgagees, and it is well established that in actions lawfully prosecuted by one person for the benefit of another he may, for that purpose, employ counsel, whose reasonable compensation is a charge upon the proceeds of a recovery so obtained. . . . There was therefore no error in the order of distribution as entered by the trial court. Interveners have obtained the full proceeds of the insurance, subject only to the reasonable expense of its collection, and they suffer no wrong in the refusal of their demand for more."

The same rule is applied in bankruptcy matters in the federal courts, where there is no general fund out of which the expenses of administering the bankrupt's property subject to liens can be paid, which is analogous to the case before us. Where this is true administration expenses and fees of counsel for the trustee are chargeable upon the fund raised by sale of the mortgaged property: *In re Torchia,* 188 Fed. 207; *Robinson v. Dickey,* 36 Fed. (2d) 147; *In re King,* 46 Fed. (2d) 115. In *Buell v. Kanawha Lumber Corp.,* supra, at page 769, the court stated that "funds arising from the proceeds of the sale of property upon which there were mortgages or other liens" might, in proper cases, be charged with a general creditor's attorney's fees and expenses which "in the court's opinion the mortgagees would have been put to had they themselves foreclosed and liquidated the specific property subject to their liens."

The court below reached its conclusion relying in part upon *Deering v. Schreyer,* 171 N. Y. 451, 64 N. E. 179. That case, however, was an action at law by the attorney against his client, whose land had been taken for public use, to recover his fee, and the mortgagee, whose debt had been paid, was not before the court, the action as to him having been dismissed. The case turned on the interpretation of the contract of retainer and no question of the attorney's equitable right to compensation was involved or considered by the court.

The jurisdiction of equity in cases analogous to the case at bar is well recognized. In *Wylie v. Coxe,* 56 U. S. 415, the Supreme Court of the United States held that where a contract was made with an attorney for the prosecution of a claim against Mexico for a stipulated proportion of the amount recovered, and such professional services were rendered, the death of the owner of the claim did not dissolve the contract, *but the compensation remained a lien upon the money when recovered.* In that case Mr. Justice McLean, speaking for the court, said: "It is objected that equity can exercise no juris-

diction in the case, as adequate relief may be obtained at law. There may be a legal remedy, and yet if a more complete remedy can be had in chancery, it is a sufficient ground for jurisdiction. . . . The evidence proves that the complainant was to receive a contingent fee of five per centum out of the fund awarded, whether money or scrip. This being the contract, it constituted a lien upon the fund, whether it should be money or scrip. The fund was looked to and not the personal responsibility of the owner of the claim. . . . Under the contract the lien on the fund, in the hands of the administrator, is a sufficient ground for an equity jurisdiction." Justice STORY in his Equity Jurisprudence (14th edition, volume 2) says a lien ". . . is often created and sustained in equity where it is unknown at law. . . ."

We base our decision upon the facts that the primary right to institute and conduct the proceedings in behalf of the property, before the board of view, was in the property's owner; that the mortgagee who loaned money and took a first lien on this property as security therefor was chargeable with knowledge of the fact that if the property should be subjected to condemnation proceedings, (as it was), the right of action for damages was in the owner and this right of action carried with it the right to engage counsel to protect the interests of both the owner and the mortgagee, whose interests in such proceedings were not antagonistic but identical; that the mortgagee knew of the employment of Attorney Jacoby by the owner to protect the joint interests of the owner and the mortgagee in these condemnation proceedings and apparently approved of his employment and of what he did professionally in the matter; and that the professional efforts of this attorney produced, to a substantial extent, the fund for distribution, to which fund the attorney was required, under his agreement with his record client, to look for compensation, and against which the attorney had, under the circumstances here present, an equitable claim which has often received judicial

recognition under the name of a "charging lien." See *Wylie v. Coxe,* 15 How. 415; *Peugh v. Porter,* 112 U. S. 737; *U. S. v. Blackfeather,* 155 U. S. 180; *In re Heinsheimer,* 214 N. Y. 361, 108 N. E. 636; *Hale v. Tyson,* 79 Ala. 107, 79 So. 499, and *Jacobson v. Miller,* 50 N. D. 828, 198 N. W. 349, 34 A. L. R. 317. We conclude that appellant Jacoby was entitled to have the court below enter an order directing payment to him of his reasonable counsel fees and expenses of litigation.

The decree overruling appellants' exceptions are reversed, and it is directed that the court below allow the appellant, Myron Jacoby, Esq., a reasonable fee for his services in the condemnation proceedings and otherwise also enter a decree in conformity with this opinion; costs to be paid by appellee.

Mr. Justice DREW dissents.

Mr. Justice SCHAFFER did not sit in this case.