**Vassaluzzo Estate**

*Samuel Moonblatt,* for accountant.

*Lawrence J. Richette,* for claimant.

SHOYER, J., October 18, 1971.—By decree dated May 5, 1969, Clementine Vassaluzzo was adjudged an incompetent and The Fidelity Bank was appointed guardian of her estate.

The instant interim account was filed at the direction of the court, in order to consider the claim of Lawrence J. Richette, Esq., for counsel fee.

Mr. Richette has requested a fee of $2,500 as compensation for his professional services in having Clementine Vassaluzzo adjudicated an incompetent and in securing the appointment of a guardian of her estate. The account shows its gross value to be in excess of $53,000. The guardian has refused its approval of the fee, contending that the amount asked is far too high. In his petition in support of his request, Mr. Richette has averred the following, inter alia:

"10. Your petitioner spent upward of thirty hours seeking the whereabouts of Clementine Vassaluzzo and, in turn, the whereabouts of her children.

"11. It was necessary to reach the children of Mrs. Vassaluzzo because the latter refused to answer your petitioner's letters, and refused your petitioner admittance to her home when he called upon her three times in December, 1968, and in January and April of 1969.

"12. Only after many interviews in the neighborhood of Mrs. Vassaluzzo did your petitioner learn that Mrs. Vassaluzzo had a daughter married to a police officer, and a son, a Vietnam veteran, who resided with Mrs. Vassaluzzo.

"13. The discovery of the whereabouts of these children was made even more difficult when petitioner learned that the daughter of Mrs. Vassaluzzo resided in Philadelphia, with an unlisted telephone number and an unknown address, and that the son had legally changed his name and no one knew what his new name was or of his whereabouts.

"14. After additional investigation, it was decided by your petitioner, based on statements made by the Parish Priest and Mrs. Vassaluzzo's neighbors, that Mrs. Vassaluzzo should be examined psychiatrically, since she seemed incompetent.

"15. Your petitioner filed a petition under the Incompetents' Estates Act of 1955, seeking the appointment of a guardian for Mrs. Vassaluzzo.

"16. Service of that petition was made personally by your petitioner on Mrs. Vassaluzzo and her children and the matter was set down for a hearing before the Honorable Kendall H. Shoyer.

"17. Your petitioner spent upwards of ten hours contacting Mrs. Vassaluzzo in person (her visits to petitioner's office) and on the telephone, responding to many calls in which she cursed your petitioner and his wife.

"18. Your petitioner spent upwards of fifteen hours in research in the preparation of the petition for the appointment of a guardian and in preparation for the trial of the case.

"19. Two hearings were held on the petition—April 28, 1969 and May 5, 1969—which involved approximately six hours.

"20. The Hon. Kendall H. Shoyer entered a Decree finding Mrs. Vassaluzzo incompetent and appointing the Fidelity Bank as guardian of her estate on May 5, 1969.

"21. All pleadings and orders were prepared,

and service of the notice of hearings were personally made by your petitioner."

As the judge who issued the original show cause citation and thereafter held the hearings which resulted in the adjudication of Mrs. Vassaluzzo's incompetency, I am personally familiar with the truth and accuracy of many of Mr. Richette's averments.

While Mr. Richette's fee seems outrageously high at first glance, the fact remains that he did perform valuable service for the incompetent. She has refused to respond to all communications addressed to her. If the incompetent persists in her refusal to request distribution of any of the estate funds in her lifetime, then her two children will probably be the benefactors of Mr. Richette's productive activity after her death.

The filing of the petition for incompetency by Mr. DiPaul, a co-executor under the will of Albert Carbone, deceased, was a necessary part of the discharge of the executors' responsibilities in the estate of Albert Carbone, as well as in the estate of Frank C. Carbone. It is to the former of these estates that Mr. Richette should have looked for his compensation. I have examined the record of the audit by Judge Lefever of the executors' account in that estate. Notice thereof was given to The Fidelity Bank, the guardian in this estate. The record shows that Mr. Richette and his co-counsel were well compensated and no objection was raised by this guardian.

In the present estate, Mr. Richette's claim for compensation has dubious legal merit. Volunteers in legal matters have no claim to compensation unless they create the fund for the specific party or parties whom they represent, the beneficiaries who are represented indirectly being compelled to contribute their pro rata share as a matter of equity. The fact

that the attorney's efforts also benefit the other distributees is not sufficient of itself to justify an allowance when no additional fund has been raised: Harrison Estate, 221 Pa. 508, 510. Here, nothing was done by Mr. Richette to produce the fund but his services were directed toward its protection along with solving the problem of distribution of personalty and realty in the two Carbone estates. There is authority for the allowance of compensation to counsel of beneficiaries who have preserved estate assets from dissipation: Trustees v. Greenough, 105 U.S. 527, Cf. Harris Appeal, 323 Pa. 124, 131-32. In Duncan Trust, 19 Fiduc. Rep. 490, the remainderman of an inter vivos trust retained counsel to oppose the trustees' inclusion of an additional remainderman by way of reforming the trust instrument. Counsel were successful in opposing the reformation and the lower court allowed counsel fee and costs for printing to be paid out of the principal of the trust.

The power of the orphans' court to allocate costs has been recognized by our Supreme Court even in the absence of statutory authority: King Estate, 336 Pa. 1. The common law required such authority, otherwise as stated in Alexander v. Herr's Executors, 11 Pa. 537, 539, "Clients would pay liberally out of the pockets of their adversaries." See Fiduciary Review, February 1970, page 1. Now the orphans' court by section 761 of the Orphans' Court Act of 1951, 20 PS §2080.761 has express authority. Section 761 reads as follows:

"Section 761. Allowance and Allocation.

"The allowance and allocation of costs incident to proceedings before the court or to the administration of estates or trusts within the jurisdiction of the court shall be as now or hereafter provided by law,

and in the absence thereof, as fixed by the court by general rule or special order."

After careful consideration of Mr. Richette's claim for services and a conference in chambers with him and Samuel Moonblatt, Esq., attorney for the guardian, I have decided to allow Mr. Richette's claim in the amount of $1,000. Mr. Moonblatt is, and has been, familiar with Mr. Richette's efforts on behalf of the incompetent here and in the Carbone estates and believes that under all the circumstances this amount is justified, and he has advised the guardian to that effect.

And now, October 18, 1971, the account is confirmed nisi.