[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION RE: MOTIONS FOR DISBURSEMENT OF FUNDS
The present action arises out of condemnation proceedings instituted pursuant to General Statutes 16-263, et seq., by the plaintiffs, Iroquois Gas Transmission System, L.P., and Iroquois CT Page 3240 Gas Transmission System, Inc., against Robert Zuckerman and Jonathan Zuckerman ("the defendants") and others. The plaintiffs deposited the sum of $300,000 with the court and condemnation proceedings are continuing for the purpose of establishing damages. The committee report has been filed establishing damages in the amount of $445,050. The committee report is, however, not final at the present time in view of pending motions. By agreement of the parties, the sum of 15,882.66 has been ordered disbursed to the Town of Shelton in payment of tax liabilities. The present dispute involves claims for disbursement as to the balance of the $300,000 fund.
The New Haven Savings Bank ("the Bank") claims it should be entitled to the remaining fund by virtue of certain mortgages which have priority as to all other creditors. The attorneys for the defendants claim a right to part of the fund to reimburse them for their attorney's fees in the amount of $77,787.50 and their costs of $22,709.55. The attorneys for the defendants assert their right to the funds on deposit by virtue of the "common fund" or "equitable fund" doctrine which supports claims of counsel fees and costs for preserving or bringing a fund into existence. Such cases as Trustee International Fund v. Greenough, 105 U.S. 527,26 LED 1157 (1981); Central Railroad and Bank Co., 113 U.S. 916,5 S.Ct. 387, 28 LED 1916 (1985); Appeal of Harris, 223 Pa. 124, 186 A. 92
(1936); Union and New Haven Trust Company v. Osterweis, 9 Conn. Sup. 11
(1940). The justification for such a doctrine is based upon the premise that parties who benefit from a transaction should share its expense. The attorneys for the defendants also assert the existence of a charging lien which is a lien for services of an attorney who brought a fund into existence, citing such cases as Heinsheimer v. Shuttle, 214 N.Y. 361, 108 N.E. 636
(1953); Dewaldelaer v. Swandley, 78 Conn. 654 (1906); Andrews v. Morris, 12 Conn. 444 (1938).
General Statutes 16-266 provides, in part, as follows:
 "If the amount of the damages awarded to any such property owner exceeds the amount offered to such property owner by such corporation for such land, rights of way, easements or interests in land prior to the preferring of such petition to such court or judge, such court or judge shall award to such property owner such attorney and appraisal fees as the court may determine to be reasonable."
CT Page 3241
As far as the court can determine, the claim made by the attorneys for the defendants is not related to the bringing of the $300,000 fund into existence, but rather, it is related to the anticipated increase in that fund resulting from tile condemnation proceedings currently in process but not yet completed. In the present action, the above quote provisions of General Statutes 266 provide a basis upon which the reasonable attorney's fees incurred by the defendants are payable by the plaintiffs. There is no claim or suggestion made in the present action that the plaintiffs are unable to pay such fees, nor that the defendants themselves are unable to pay such fees. Accordingly, the court does not find an appropriate basis for the exercise of the court's equitable powers to distribute the funds on deposit to the attorneys for the defendants.
The Bank claims a right to the fund solely based upon provisions contained in an agreement between the Bank and the defendants entitled "Commercial Revolving Loan Open End Mortgage", which provides, in pertinent part, as follows:
"12. CONDEMNATION, ETC.
 Notwithstanding any taking of all or any part of the Mortgaged Premises by eminent domain by any public or quasi-public authority or corporation or any other injury to or decrease in the value of the Mortgaged Premises resulting from any alteration of the grade of any highway or street or any other action by any such public or quasi-public authority or corporation, the principal sum of the Note shall continue to earn interest at the rate there in provided until the amount of any award or payment resulting therefrom shall have been actually received by the Grantee and any reduction in the principal sum of the Note resulting from the application by the Grantee of any such award or payment as hereinafter set forth shall be deemed to take effective only on the date of such receipt by the Grantee. If the Grantor desires to alter, restore or build any part of the Mortgaged Premises which may be altered, damaged or destroyed as a result of any such taking or alteration of grade or other such action by any such public or quasi-public authority or corporation, and if Grantee consents thereto in writing, such amount of such award or payment as may be necessary to reimburse the Grantors, without interest, for the cost of any such alteration, restoration or rebuilding by the Grantors CT Page 3242 shall be paid by the Grantee to the Grantors. The balance of any such award or payment, and if the Grantors do not wish to alter or restore or rebuild the Mortgaged Premises which may have been so altered, damaged or destroyed, or if the Grantee does not consent thereto, the entire amount of such award or payment of account of the principal of the indebtedness secured hereby, whether or not then due or payable an in such manner as the Grantee in it sole discretion may see fit, and the Grantee shall remit any excess to the Grantors. If prior to the receipt by the Grantee of such award or payment the Mortgaged Premises shall have been sold on foreclosure of this mortgage, the Grantee shall have the right to receive said award or payment to the extent of any deficiency found to be due upon such sale, with legal interest thereon, whether or not a deficiency judgment on this mortgage shall have been sought or recovered or denied and of the reasonable counsel fees, costs and disbursements incurred by the Grantee in connection with the collection of such award or payment."
The defendants claim that the above quoted provisions are not comprehensible with respect to an agreement between the parties that the Bank has the right to receive the proceeds of a condemnation. The present proceeding does not involve a request for a prejudgment remedy, foreclosure of a mortgage, a deficiency judgment or a request for a reformation of the agreement of the parties so as to conform with their intention. Upon a review of Paragraph 12, the court cannot conclude as a matter of law that there is a clear and unambiguous agreement between the defendants and the Bank that the Bank is entitled to the proceeds on deposit in the Superior Court.
There has been no claim advanced by any of the parties with respect to the right of the Bank, under equitable or other considerations, to have a priority to the funds on deposit. See Coffin v. Valente, 115 Conn. 428, 434 (1932); see also General Statutes 48-21. Accordingly, the court does not decide the rights of the Bank to any funds on deposit other than the determination herein made that under Paragraph 12 of the agreement between the Bank and the defendants does not provide a clear continual agreement to do so.
Rush, J. CT Page 3243