514 A.2d 673

Brandywine Savings and Loan Association, Appellant *v.* Redevelopment Authority of Chester County, George J. D'Ambrosio and Manito Title Insurance Company, Appellees.

Argued June 13, 1986, before Judges MACPHAIL and COLINS, and Senior Judge KALISH, sitting as a panel of three.

*Glenvar E. Harman, Glenvar E. Harman Associates,* for appellant.

*George J. D'Ambrosio,* with him, *James T. Owens, Owens, D'Ambrosio & Nescio,* for appellees.

OPINION BY JUDGE MACPHAIL, September 4, 1986:

Brandywine Savings and Loan Association (Brandywine) appeals here from an order of the Court of Common Pleas of Chester County awarding George J. D'Ambrosio counsel fees in the amount of $3,250.00 from funds held in his attorney escrow account. We reverse.

Jose A. Toledo (condemnee) acquired title in 1976 to property located at 211 East Market Street, West Chester, Chester County, Pennsylvania as recorded in the Office of the Recorder of Deeds in and for Chester County in Deed Book M-48 page 36. On July 24, 1979, Brandywine recorded a mortgage on these premises in Deed Book D-58 page 546.

On February 6, 1980, the Redevelopment Authority of the County of Chester (Authority) filed a declaration

of taking condemning the property located at 211 East Market Street in West Chester. The Authority paid $8,250.00 to condemnee as estimated just compensation. That money was retained by D'Ambrosio in his escrow account because of possible claims against the fund by reason of the fact that the condemnee had filed for bankruptcy and because of the outstanding mortgage.[1] The Authority, as condemnor, petitioned the court of common pleas for the appointment of a board of view, which was granted. The petition listed only condemnee as having an interest in the property.

Only the condemnee and the Authority were represented and participated in both the view and the hearing. The board of view awarded general damages in the amount of $14,200.00 and counsel fees in the amount of $500.00 to condemnee, for a total award of $14,700.00. No appeal to the court of common pleas was taken from that award. The Authority paid the additional $5,950.00 as just compensation at settlement to Manito Title Insurance Company (Manito), to be held in escrow.

Thereafter, Brandywine filed a petition in the trial court naming the Authority, D'Ambrosio and Manito as Respondents. The petition averred that there was a balance due and owing on Toledo's mortgage of $18,335.42, that the Authority knew or should have known of Brandywine's mortgage interest and that the Authority was obligated under the provisions of the Eminent Domain Code (Code), Act of June 22, 1964, Special Sess., P.L. 84, *as amended*, 26 P.S. §§1-101—1-903, to provide Brandywine with notice of the condemnation. Brandywine alleged further that it was the Authority's obligation to see to the proper distribution of the damages and that as a mortgagee, it should receive all of the

---

[1] R.R. at 41.

award. The petition requested that Manito and D'Ambrosio pay over to it whatever portion of the award they received as well as asking for an additional hearing on the issue of damages.

The court issued a Rule upon the Authority, D'Ambrosio and Manito to show cause why the relief prayed for in the petition should not be granted.

Neither Manito nor the Authority responded to Brandywine's petition. D'Ambrosio filed an Answer and New Matter to the petition, asserting an interest in the subject matter of the petition to the extent of his claim for attorney's fees as condemnee's counsel in the condemnation proceeding. D'Ambrosio alleged that pursuant to a contingency fee agreement, he was entitled to $3,225.00.

After a hearing on Brandywine's petition, the court of common pleas ordered on September 25, 1984 that Manito pay to Brandywine the sum of $5,950.00 that it was holding in escrow. The court, on December 13, 1984, ordered that D'Ambrosio was entitled to retain $3,250.00 as counsel fees and costs and directed him to turn over the remaining $5,000.00 in his escrow account to Brandywine. Brandywine has appealed the December 13, 1984 order to this Court.

Brandywine argues here that D'Ambrosio has not satisfied the requirements of establishing a "charging lien", and that even if a charging lien were established, the trial court erred in enforcing the lien and/or giving it priority over Brandywine's interest.

"[T]he right of an attorney to a *charging* lien upon a fund in court or otherwise applicable for distribution on equitable principles, which his services primarily aided in producing and to which, by agreement with his client, he is to look for compensation, has long been recognized. . . ." *Harris's Appeal,* 323 Pa. 124, 129, 186 A. 92, 94-5 (1936) (emphasis in original). In *Recht v.*

*Clairton Urban Redevelopment Authority*, 402 Pa. 599, 168 A.2d 134 (1961), our Supreme Court summarized the requirements of an attorney's charging lien:

> [B]efore a charging lien will be recognized and applied, it must appear (1) that there is a fund in court or otherwise applicable for distribution on equitable principles, (2) that the services of the attorney operated substantially or primarily to secure the fund out of which he seeks to be paid, (3) that it was agreed that counsel look to the fund rather than the client for his compensation, (4) that the lien claimed is limited to costs, fees or other disbursements incurred in the litigation by which the fund was raised and (5) that there are equitable considerations which necessitate the recognition and application of the charging lien.

402 Pa. at 608, 168 A.2d at 138-39.

Here, there is a fund "otherwise applicable for distribution," *i.e.*, the attorney's escrow account, which was created by the efforts of D'Ambrosio on behalf of the condemnee. There is also a contingent fee agreement under which D'Ambrosio agreed to look to that fund for compensation.[2] The lien claimed is limited to D'Ambrosio's costs, fees, and disbursements. However, there are equitable considerations—condemnee's lack of notice to Brandywine—which we hold prevents the recognition and application of the lien. *See also Almi, Inc. v. Dick Corp.*, 31 Pa. Commonwealth Ct. 26, 375 A.2d 1343 (1977).

---

[2] Toledo did not testify at the hearing on Brandywine's petition. D'Ambrosio testified that he had a written contingency fee agreement with Toledo providing for a 50% fee of any sum recovered above the estimated just compensation paid by the Authority. D'Ambrosio also testified that that agreement had been either lost or misplaced.

In *Harris's Appeal,* the court was confronted with a similar factual scenario with the important exception that the mortgagee bank in *Harris* was aware of the condemnation proceedings but opted, through inaction, to let condemnee's attorney represent its interest. It was not until the board of view awarded a sum of less than the amount due on the mortgage that the mortgagee intervened and requested that the entire award from the board of view be turned over to it. In rejecting the mortgagee's claim, the Court observed that "[i]t would be manifestly unjust to permit the mortgagee to reap all the benefits of the attorney's endeavors and to 'get out from under' even the smallest share of the burden which produced the benefits." 323 Pa. at 135, 186 A.2d at 97.

In the case *sub judice,* the record is clear that Brandywine was never aware of the eminent domain proceedings until it instituted foreclosure proceedings against Toledo's property. Brandywine insists that it would not be manifestly unjust under circumstances where it had no opportunity to intervene to hold it entitled to the entire award in this case. *Recht* and *Furia v. Philadelphia,* 180 Pa. Superior Ct. 50, 118 A.2d 236 (1955), cited by Brandywine as authority for the proposition that only where the mortgagee is aware of but does not participate in the condemnation proceeding does the condemnee's attorney meet the requirements for a charging lien, will not support that argument. In *Recht,* our Supreme court held that a charging lien was not established where the attorney participated in the condemnation proceedings but not the appeal from that award. The court noted that as a result of such an appeal, the board of view's award is extinguished and the appeal proceeds *de novo.* The only fund available in *Recht* was created as a result of trial, so that the attorney's services did not operate, substantially or

primarily, to create the fund upon which he claimed the right to a charging lien. These facts are clearly distinguishable from the facts in the case *sub judice*.

In *Furia*, a policeman suffered injuries in an automobile accident and hired an attorney to represent him in his personal injury action. The City of Philadelphia (City), the policeman's employer, continued to pay the policeman full wages in the amount of $263.75. The attorney advised the City solicitor of his representation. The City solicitor, in turn, informed the attorney of the City's subrogation claim in the amount of $263.75. The attorney acknowledged the City's claim subject to his usual attorney's fee. The case was settled for $850.00, and the attorney offered to remit $175.83 to the City, having deducted $87.92 as a fee for his services. The City refused any amount less than the full amount of its subrogation claim. In holding that the City's claim for subrogation was subject to the payment of reasonable attorney's fees, the Superior Court stated:

> [W]here the fund is created by the work of counsel in behalf of his client, as was done under the particular facts of this case, and the city's right to participate in the fund arises only by virtue of the equitable doctrine of subrogation, it would be inequitable to require the policeman employe to bear all the expenses necessarily expended to bring that fund into being. . . . It would be much more equitable in all cases to require the city as well as the employe to bear a pro rata share of the expenses.

180 Pa. Superior Ct. at 57-8, 118 A.2d at 240. *Furia*, of course, does not compel the conclusion that D'Ambrosio is not entitled to a charging lien in the instant case.

Brandywine, however, also insists that the equities fall squarely in its favor, emphasizing that under the Code, condemnee *and* D'Ambrosio had a statutory duty

to notify the Authority and the board of view of Brandywine's mortgage interest. Section 506(a) of the Code, 26 P.S. §1-506(a) requires the *condemnee* to furnish the names and addresses of known mortgagees to the viewers and condemnor.[3] It is undisputed that the condemnee herein did not notify the viewers or condemnor; neither did D'Ambrosio. The trial court suggests that there was no duty upon D'Ambrosio, as condemnee's counsel, to notify the board. We strongly disagree with this suggestion. As counsel for condemnee, D'Ambrosio stepped into condemnee's shoes and all the duties imposed upon condemnee were then imposed upon D'Ambrosio. D'Ambrosio represented condemnee; it would be ludicrous to suggest that only condemnee and not his counsel had the duty to notify the board and the Authority of the mortgagee's interest.

No sanction is provided in Section 506(a) for the condemnee's failure to notify the condemnor and the board of view of a mortgagee's interest. Here, the lack of notice obviously deprived Brandywine of the opportunity of petitioning the court to intervene in the proceedings to protect its interest. Whether or not the petition to intervene would have been granted and whether or not the board would have arrived at a higher figure in its award are irrelevant considerations. The important fact is that Brandywine never had the opportunity to protect its interest which is the obvious reason for the provisions of Section 506(a). While it is true that the fund here was solely realized through the efforts of D'Ambrosio, the only reason for that situation is because Brandywine, due solely to D'Ambrosio's omission, never had the opportunity to participate in producing the fund.

---

[3] Brandywine's petition, as we have noted, avers that the Authority had knowledge of its mortgage and was obligated to notify Brandywine of the condemnation proceedings. We find no statutory duty imposed upon the *condemnor* in this respect.

Finally, as we have noted, recognition of an attorney's charging lien is based in part upon equitable considerations. *Recht*. "He who comes into equity must come with clean hands." 27 Am. Jur. 2d. *Equity* §139 (1966). It would be inequitable under these circumstances to recognize D'Ambrosio's charging lien.[4]

Accordingly, we hold that the trial court erred in awarding D'Ambrosio counsel fees on the basis that he met the requirements for a charging lien.

### ORDER

The order of the Court of Common Pleas of Chester County in the above-captioned matter is hereby reversed.

---

[4] D'Ambrosio, as we have noted, freely admitted that he had knowledge of the mortgage, but he offered no explanation as to why he failed to notify the mortgagee of the eminent domain proceedings. There is nothing in the record to indicate that his client had any knowledge of the provisions of Section 506(a). D'Ambrosio, as legal counsel, certainly was, or should have been, aware of the provisions of the Code. His unexplained failure to notify Brandywine under these circumstances raises at least an inference of wrongdoing from which he now seeks to profit. This we will not permit to happen.

---

DISSENTING OPINION BY JUDGE COLINS:

I respectfully dissent.

While it is true, as the majority points out, that Brandywine did not have notice of the condemnation, and thus did not have the opportunity to select its own counsel, there is no allegation that its interests were not fairly represented. Furthermore, there is no allegation by Brandywine that the amount of the attorney's fee award is unreasonable. Brandywine's only complaint is that payment of the fee will diminish the amount it ultimately receives.

Regardless of the attorney hired by Brandywine to represent its interest in the condemnation proceedings, a reasonable fee would have been paid such attorney, thus diminishing Brandywine's award in any event. Because Brandywine was fairly represented, and the fee award reasonable, equitable considerations prevail, and the trial court award should be affirmed. A party should not profit from another's endeavors without making just reparation.