2019 PA Super 246

| | | |
|---|---|---|
| GEOFFREY H. JAGO | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| TINA M. JAGO | : | |
| | : | |
| Appellant | | No. 32 EDA 2019 |

Appeal from the Order Entered November 9, 2018
In the Court of Common Pleas of Lehigh County
Domestic Relations at No(s):  2018-C-1569

BEFORE:   PANELLA, P.J., GANTMAN, P.J.E., and PELLEGRINI*, J.

OPINION BY GANTMAN, P.J.E.:                    **FILED AUGUST 19, 2019**

Appellant, Tina M. Jago ("Wife"), appeals from the order entered in the Lehigh County Court of Common Pleas, which vacated a qualified domestic relations order ("QDRO") the court had previously entered upon joint petition of Wife and Geoffrey H. Jago ("Husband") and denied the parties' amended joint petition for entry of an amended QDRO.[1]  We affirm.

The relevant facts and procedural history of this case are as follows. The parties married on June 21, 1997, and are still married.  Husband is a participant in a JetBlue Airways Retirement Plan ("Plan").[2]  On June 21, 2018,

---

[1] Husband did not file a notice of appeal, and he is not a party to this appeal.

[2] The parties do not dispute and the record makes clear the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C.A. § 1001 *et seq.*, governs this Plan.

---

\* Retired Senior Judge assigned to the Superior Court.

the couple filed a "Verified Joint Petition for QDRO." In the petition, the parties sought to transfer $400,000.00 from the Plan to an individual retirement account ("IRA") in Wife's name. The petition read, in relevant part, as follows:

> 1. [Husband], Plan Participant; and [Wife], Alternate Payee, were married on or about June 21, 1997. … There is no pending petition for divorce or other family law matter before this Honorable Court.
>
> 2. [Husband] and [Wife], as current spouse and qualifying Alternate Payee of [Husband], both wish to execute a [QDRO]…regarding the [Plan]…. … Said QDRO properly distributes the funds pursuant to the mutual requests of the parties.
>
> \* \* \*
>
> 4. [Husband] has obtained pre-approval of the attached QDRO from the [Plan], Plan Administrator. …
>
> 5. The Parties further acknowledge and expressly state that the signing of the QDRO is for public records purposes only and pursuant to federal law restrictions. Notwithstanding any particular language of the joint Petition and/or QDRO, the parties do not intend to partition any of the funds involved in the QDRO transfer, nor change the classification of the community nature of the funds in [Husband]'s name into separate property into the name of [Wife].
>
> 6. The parties acknowledge and agree that should any portion of this Joint Petition or QDRO be interpreted to have changed the classification of the funds transferred; then both parties shall immediately sign documentation pursuant to Pennsylvania law donating the funds back to the Plan.

(Verified Joint Petition for QDRO, filed 6/21/18; R.R. at 3a-4a). The trial court approved the proposed QDRO *via* an order dated June 22, 2018, and docketed June 25, 2018.

Subsequently, the parties sought to increase the amount of funds

transferred from the Plan to Wife's IRA. In a letter dated September 13, 2018, the Plan administrator pre-approved a transfer of $700,000.00 conditioned upon the trial court executing an amended QDRO. On October 2, 2018, the parties filed an "Amended Verified Joint Petition for QDRO," seeking to transfer $700,000.00 from the Plan to Wife's IRA. The October 2nd proposed QDRO was nearly identical to the original QDRO; the only significant difference between the two QDROs was the amount of funds the parties sought to transfer. Following a hearing on November 2, 2018, the court denied the amended QDRO petition and vacated the initial QDRO on November 9, 2018. In its November 9th order, the court expressly stated the order was final per Pa.R.A.P. 341(c).

On December 6, 2018, Wife timely filed a notice of appeal. The court ordered Wife on December 11, 2018, to file a concise statement of errors complained of on appeal per Pa.R.A.P. 1925(b); Wife timely complied on January 2, 2019. On February 8, 2019, this Court issued a rule to show cause why the November 9, 2018 order is a final, appealable order; Wife filed a response on February 19, 2019. This Court discharged the rule to show cause on February 21, 2019, and deferred the matter to the merits panel.[3]

_____

[3] Rule 341 of appellate procedure defines a final order as one that "disposes of all claims and of all parties." Pa.R.A.P. 341(b)(1). "When more than one claim for relief is presented in an action…the trial court…may enter a final order as to one or more but fewer than all of the claims…only upon an express determination that an immediate appeal would facilitate the resolution of the

- 3 -

Wife raises three issues for our review:

WHETHER THE TRIAL COURT ERRED IN FAILING TO RECOGNIZE THE PROPOSED ORDER AS "RELATING TO CHILD SUPPORT…OR MARITAL PROPERTY RIGHTS TO A SPOUSE" UNDER 29 U.S.C.A. [§] 1056[?]

WHETHER THE TRIAL COURT ERRED IN FAILING TO RECOGNIZE THE PROPOSED ORDER AS APPROVED BY THE PLAN ADMINISTRATOR AS A QDRO[?]

WHETHER THE TRIAL COURT ERRED IN REQUIRING A PENDING DIVORCE AS A PREREQUISITE TO ENTERING A QDRO[?]

(Wife's Brief at 8).

In her issues combined, Wife contends a pending divorce or marital separation is not required for entry of a QDRO. Wife submits requiring a divorce decree or a pending domestic relations action as a prerequisite to the entry of a QDRO elevates form over substance, citing **Brown v. Continental Airlines**, 647 F.3d 221 (5th Cir. 2011). Wife claims courts can enter QDROs in actions other than divorce to recognize the interests of a non-spouse, such as a child or other dependent. Wife also argues the parties' QDROs satisfied all other statutory requirements. Wife insists entry of the amended QDRO is in accordance with Pennsylvania domestic relations law, as the QDRO concerns

_____

entire case." Pa.R.A.P. 341(c). "Such an order becomes appealable when entered." **Id.** Instantly, the November 9, 2018 order disposed of the only claim the parties' presented to the court, namely, a joint request for entry of a QDRO. **See** Pa.R.A.P. 341(b)(1). Additionally, the court's November 9th order specified the order was final and appealable per Rule 341(c). **See** Pa.R.A.P. 341(c). Therefore, the November 9, 2018 order is properly before us for review.

marital property rights.   Wife concludes this Court should reverse the trial court's order that denied the parties' petition to enter an amended QDRO and vacated the initial QDRO, and remand for entry of the amended QDRO.   We disagree.

Chapter 18, Title 29 of the United States Code outlines the regulatory scope of ERISA.   **See generally** 29 U.S.C.A. § 1001 *et seq*.   One of the principle objectives of ERISA is to protect the interests of plan participants and beneficiaries.   **Boggs v. Boggs**, 520 U.S. 833, 845, 117 S.Ct. 1754, 1762, 138 L.Ed.2d 45, ____ (1997) (citing 29 U.S.C.A. § 1001(b) and other sections). ERISA accomplishes this objective through an "anti-alienation" provision, which prevents a plan participant from granting an interest in the benefits of the participant's retirement plan to a non-participant.   **Id.** at 851, 117 S.Ct. at 1765, 138 L.Ed.2d at ____ (citing 29 U.S.C.A. § 1056(d)(1)).   "The purpose of the proscription, in ERISA, on alienation and assignment of pension funds is to protect the participant from [the participant's] own financial improvidence." **Richardson v. Richardson**, 774 A.2d 1267, 1270 (Pa.Super. 2001).   ERISA's anti-alienation provision is compulsory and has few limited statutory exceptions.   **Boggs, supra** at 851, 117 S.Ct. at 1765, 138 L.Ed.2d at ____ (citing 29 U.S.C.A. §§ 1056(d)(2), (3)(A)).

ERISA provides for the entry of a valid QDRO as one exception to ERISA's anti-alienation provision.   **Id.** at 846-47, 849, 117 S.Ct. at 1763-64, 138 L.Ed.2d at ____ (noting Congress amended ERISA to create, *inter alia*,

QDRO exception to anti-alienation provision when it enacted Retirement Equity Act of 1984 ("REA")). "A QDRO is a type of **domestic relations** order that creates or recognizes an alternate payee's right to, or assigns to an alternate payee the right to, a portion of the benefits payable with respect to a participant under a plan." *Id.* at 846, 117 S.Ct. at 1763, 138 L.Ed.2d at ___ (emphasis added); *Smith v. Smith*, 5 95 Pa. 80, 85 n.3, 938 A.2d 246, 248 n.3 (2007). The QDRO provision gave life to one of REA's central purposes, specifically "to give enhanced protection to the spouse and dependent children in the event of divorce or separation...." *Boggs, supra* at 847, 117 S.Ct. at 1763, 138 L.Ed.2d at ___; *Mackey v. Lanier Collection Agency & Service, Inc.*, 486 U.S. 825, 838, 108 S.Ct. 2182, 2190, 100 L.Ed.2d 836, ___ (1988) (stating: "The [REA] included several changes in ERISA which Congress felt were necessary to guarantee that the Nation's private retirement-income system provided fair treatment for women. … Among the [REA]'s provisions were amendments to ERISA which insured that [ERISA] could not be used to block the enforcement of '[QDROs]'—generally, court orders providing for child support and alimony payments by ERISA plan participants"). Outside the REA's amendments to ERISA, which include the QDRO provision, "ERISA does not confer beneficiary status on nonparticipants by reason of their marital or dependent status." *Boggs, supra* at 847, 117 S.Ct. at 1763, 138 L.Ed.2d at ___. "The QDRO provisions protect those persons who, often as a result of divorce, might not receive the benefits they

otherwise would have had available during their retirement as a means of income." *Id.* at 854, 117 S.Ct. at 1767, 138 L.Ed.2d at ___. "The QDRO provisions address the rights of divorced and separated spouses, and their dependent children, which are the traditional concern of domestic relations law." *Id.* at 849, 117 S.Ct. at 1764, 138 L.Ed.2d at ___.

Section 1056 of ERISA, which governs and defines QDROs, provides in relevant part as follows:

> **§ 1056.  Form and payment of benefits**
>
> \*     \*     \*
>
> **(d)     Assignment or alienation of plan benefits**
>
> **(1)**     Each pension plan shall provide that benefits under the plan may not be assigned or alienated.
>
> \*     \*     \*
>
> **(3)(A)** Paragraph (1) shall apply to the creation, assignment or recognition of a right to any benefit payable with respect to a participant pursuant to a domestic relations order, except that paragraph (1) shall not apply if the order is determined to be a qualified domestic order. Each pension plan shall provide for the payment of benefits in accordance with the applicable requirements of any qualified domestic relations order.
>
> **(B)**     For purposes of this paragraph—
>
>> **(i)**     the term "qualified domestic relations order" means a domestic relations order—
>>
>>> **(I)**     which creates or recognizes the existence of an alternate payee's right to, or assigns to an alternate payee the right to, receive all or a portion of the benefits payable with respect to a participant under a plan, and

**(II)** with respect to which the requirements of subparagraphs (C) and (D) are met, and

**(ii)** the term "domestic relations order" means any judgment, decree, or order (including approval of a property settlement agreement) which—

**(I)** relates to the provision of child support, alimony payments, or marital property rights to a spouse, former spouse, child, or other dependent of a participant, and

**(II)** is made pursuant to a State domestic relations law (including a community property law).

**(C)** A domestic relations order meets the requirements of this subparagraph only if such order clearly specifies—

**(i)** the name and the last known mailing address (if any) of the participant and the name and mailing address of each alternate payee covered by the order,

**(ii)** the amount or percentage of the participant's benefits to be paid by the plan to each such alternate payee, or the manner in which such amount or percentage is to be determined,

**(iii)** the number of payments or period to which such order applies, and

**(iv)** each plan to which such order applies.

**(D)** A domestic relations order meets the requirements of this subparagraph only if such order—

**(i)** does not require a plan to provide any type or form of benefit, or any option, not otherwise provided under the plan,

**(ii)** does not require a plan to provide increased benefits (determined on the basis of actuarial value), and

**(iii)** does not require the payment of benefits to an

alternate payee which are required to be paid to another alternate payee under another order previously determined to be a qualified domestic relations order.

\*     \*     \*

**(K)** The term "alternate payee" means any spouse, former spouse, child, or other dependent of a participant who is recognized by a domestic relations order as having a right to receive all, or a portion of, the benefits payable under a plan with respect to such participant.

\*     \*     \*

29 U.S.C.A. § 1056(d)(1), (3A-D, K).

Generally, Pennsylvania courts enter QDROs in connection with a domestic relations matter. ***See, e.g., Stinner v. Stinner***, 520 Pa. 374, 378-80, 554 A.2d 45, 47-48 (1989); ***Zehner v. Zehner***, 195 A.3d 574, 575-76 (Pa.Super. 2018); ***Prol v. Prol***, 935 A.2d 547, 549 (Pa.Super 2007); ***Hayward v. Hayward***, 808 A.2d 232, 233-34 (Pa.Super. 2002); ***Stockton v. Stockton***, 698 A.2d 1334, 1335 (Pa.Super. 1997); ***Grieve v. Mankey***, 679 A.2d 814, 814-15 (Pa.Super. 1996) (discussing QDROs, which trial courts had approved subsequent to divorce decree in each case). Persuasive cases from other jurisdictions demonstrate that petitions to enter QDROs derive from or are adjunct to divorce proceedings, and do not constitute distinct or independent actions. ***See Dorko v. Dorko***, ___ N.W.2d ___, ___, 2019 WL 2897592, at *4-*5 (Mich. June 20, 2019) (stating: "A party's request for entry of a proposed QDRO does not involve a distinct legal 'claim.' … [T]he right to seek a [QDRO] does not arise from a wrong; instead, that right arises out of

the divorce judgment itself. … [The] procedural right to entry of the proposed QDRO [i]s indisputably established by the judgment of divorce"). ***See also Johnston v. Johnston***, ___A. 3d ___, ___, 2019 WL 2336681, at *7 (Vt. May 10, 2019); ***Ryan v. Janovsky***, 999 N.E.2d 895, 898 (Ind. Ct. App. 2013); ***Denaro v. Denaro***, 84 A.D.3d 1148, 1149 (N.Y. App. Div. 2011); ***Jordan v. Jordan***, 147 S.W.3d 255, 262 (Tenn. Ct. App. 2004) (stating consistently that QDROs are merely procedural devices which are adjunct to entry of divorce decrees and implement provisions of divorce decrees).

Instantly, when Wife and Husband filed their joint petitions for entry of a QDRO, they were legally married. The couple acknowledged in both petitions that no divorce action or other family law matter was pending between Wife and Husband. The trial court entered the first QDRO the parties sought. Subsequently, the court denied the parties' petition to amend the QDRO and vacated the first QDRO as well. In its opinion, the trial court explained its rationale as follows:

> In the [c]ourt's November 9, 2018 Order denying the parties' joint petition, the [c]ourt explained that the parties are not currently divorced and are not seeking a divorce at this time. [Wife] argued that this fact is irrelevant, and pointed to case law precluding ERISA plan administrators from refusing to deem a [DRO] as a QDRO based on the determination that the underlying divorce is a sham. ***Brown v. Continental Airlines, Inc.***, 647 F.3d 221 (5th Cir. 2011). The [c]ourt explained that the salient distinction between ***Brown*** and the case at bar is that here, the parties are not divorced and have not filed for divorce. While ***Brown*** instructs that a plan administrator should not look into the legitimacy of a divorce, in that case, the parties were legally divorced, even if they continued to cohabitate

- 10 -

with one another. *Id.* at 225….

\*    \*    \*

The parties are seeking to take $700,000.00 from [Husband]'s [Plan] and shift it to an IRA in [Wife]'s name. The parties are married and are not seeking to divorce one another. There is not a child or spousal support order in place. There is not a domestic relations dispute between the parties. While the IRA may yield a higher interest payout than any interest [Husband] could earn on the same funds through the [Plan], the [c]ourt found that under the circumstances of this matter, the entry of a QDRO is inappropriate.

The parties are asking the Court to rubberstamp a domestic relations order in the absence of a domestic relations dispute. They seek to use that order to obtain a payout of benefits to [Wife], who is an alternate payee. Unlike **Brown**, where Continental Airlines' plan manager was directed not to look into whether the parties' divorce was a sham, the parties herein are asking for the entry of an order which will enable them to circumvent the express anti-alienation provision of [ERISA]. 29 U.S.C.A. § 1056(d)(1). While a pending divorce is not absolutely necessary for the entry of a QDRO, under the rationale of the exception, the complete absence of any support obligation which would justify payment under the exception to Section 1056 appears to undermine [Wife]'s position.

\*    \*    \*

In this case, there is not a factual dispute that the parties are continuing to cohabitate with one another and have not undergone either a physical or a financial separation from one another. The parties indicated an intent to remain married, and there is not any evidence from which the [c]ourt could glean that they are separated in any capacity…. They are not able to reap any benefits from an IRA held by [Wife] into which [Husband]'s retirement funds would be paid. However, this prohibition is consistent with the underlying rationale behind the exception in ERISA.

> Because the [c]ourt did not find that the entry of a domestic relations order is appropriate in this case, the [c]ourt properly denied the parties' joint petitions for the entry of a [QDRO].

(Trial Court Opinion, filed January 7, 2019, at 5-8) (some internal citations, quotations, and emphasis omitted). The record supports the trial court's decision.

Here, Husband is a participant in an ERISA-governed plan. The parties initiated this case by filing a joint petition for entry of a QDRO for the sole purpose of transferring to Wife's IRA an amount of the Plan benefits, because Wife has a marital property interest in the Plan. **See Brown v. Brown**, 669 A.2d 969, 972 (Pa.Super. 1995), *aff'd*, 544 Pa. 360, 690 A.2d 700 (1997) (providing retirement pension benefits, vested and non-vested, are marital property rights subject to equitable distribution upon divorce). **But see Boggs, supra**. Without the entry of a valid QDRO, the parties' proposed transfer violates ERISA's anti-alienation prohibition. **See id.**; 29 U.S.C.A. § 1056(d)(1), (3)(A). In their joint petitions and throughout the life of this case, however, Husband and Wife have expressly acknowledged they are married with no pending divorce or other family law matter between them; the parties at no time stated or implied they intended to initiate a support action. Instead, the parties stated in their petitions they wished the Plan benefits to remain marital property upon entry of the proposed QDRO. Thus, the record makes clear there is no current, foreseeable, or desired divorce or domestic relations matter of any kind between Husband and Wife, which is required for the entry

of a QDRO under ERISA. **See Boggs, supra**; **Mackey, supra**. Under these circumstances, the parties' joint petitions are attempts to circumvent ERISA's anti-alienation proscription. **See Boggs, supra**; **Mackey, supra**. The cited persuasive authority leads us to conclude a QDRO is a procedural right derivative of or adjunct to a domestic relations matter, but outside the context of a domestic relations matter, a QDRO is not a distinct, discrete legal claim. **See Dorko, supra**; **Johnston, supra**; **Ryan, supra**; **Denaro, supra**; **Jordan, supra**. Accordingly, Wife's claim that a domestic relations action is not a prerequisite to entry of a QDRO fails.[4]

Based upon the foregoing, we hold that absent a divorce or other domestic relations matter pending between spouses, they cannot obtain a QDRO for the sole purpose of moving funds in the participant/spouse's ERISA plan out of the plan to the non-participating spouse. Accordingly, we affirm.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/19/19

---

[4] Due to our disposition, we will not address Wife's remaining claims on appeal.

- 13 -