J-A17004-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT OP 65.37**

| | | |
|---|---|---|
| H. MURRAY SAWYER, III | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| TARA NICOLE TAYLOR | : | |
| | : | |
| | : | No. 3116 EDA 2022 |
| v. | : | |
| | : | |
| | : | |
| STEPHANIE H. WINEGRAD | : | |
| | : | |
| | : | |
| APPEAL OF: TARA NICOLE TAYLOR | : | |

Appeal from the Order Entered November 3, 2022
In the Court of Common Pleas of Chester County Civil Division at No(s):
2020-00292-DI

BEFORE:  KING, J., SULLIVAN, J., and PELLEGRINI, J.*

MEMORANDUM BY PELLEGRINI, J.:               **FILED AUGUST 16, 2023**

Tara Nicole Taylor (Wife) appeals from the order entered in the Court of Common Pleas of Chester County (trial court) granting her former counsel Stephanie H. Winegrad, Esq., intervenor status in this divorce action and enforcing Attorney Winegrad's charging lien.  Wife challenges the trial court's order permitting Attorney Winegrad to intervene in the underlying divorce action and granting Attorney Winegrad's petition for special relief. We reverse the court's order to the extent that it permitted Attorney

_____

* Retired Senior Judge assigned to the Superior Court.

Winegrad to intervene, but affirm the court's granting of the petition for special relief.

**I.**

**A.**

The relevant facts and procedural history of this case are as follows. Wife and H. Murray Sawyer, III (Husband) were married in September of 2009 and they have two minor children together. Husband filed a complaint in divorce and a request for ancillary relief in January of 2020. Wife retained Attorney Winegrad to represent her in the divorce action and a master was appointed to consider their ancillary claims.

On June 29, 2021, Husband filed a petition for special relief seeking a determination concerning the validity of an agreement between the parties regarding a home equity line of credit taken out against the marital residence in the amount of $70,000. Husband alleged that Wife induced him to sign an agreement stating that the funds were to be used to pay marital debt and if the parties divorced, Husband would be solely responsible for repayment of the funds. Husband contended that the agreement was null and void for lack of consideration, while Wife maintained that the contract should be treated as an enforceable post-nuptial agreement.

On July 2, 2021, Attorney Winegrad filed a petition to withdraw as counsel primarily because of Wife's non-payment of legal fees. Wife objected to the petition and based solely on her objection, the trial court required

Attorney Winegrad to represent Wife at the August 2021 hearing on Husband's petition for special relief. At that hearing, Attorney Winegrad successfully represented Wife's position that the parties' agreement regarding the home equity line of credit was a valid, enforceable contract, and the $70,000 liability was not part of the marital estate. The trial court granted Attorney Winegrad's petition to withdraw as counsel after the hearing.

Wife retained new counsel to represent her at an October 26, 2021 hearing before a divorce master. At that hearing, the parties entered an "agreement resolving all of their outstanding divorce and equitable distribution issues." (N.T. Hearing, 10/26/21, at 2). The comprehensive agreement covered division of all the parties' assets including a payment of $100,000 from Husband to Wife and a transfer of various sums from Husband's 401(k), cash balance plan and IRA account to Wife using Qualified Domestic Relations Order (QDRO) transfers. (*See id.* at 3-4). The parties affirmed that this agreement resolved all outstanding divorce and equitable distribution issues; acknowledged their relinquishment of any and all claims they could have filed under the Divorce Code and waiver of their right to file exceptions; and stated their willingness to complete and sign all documents necessary to effectuate the terms of their agreement. (*See id.* at 9-13). On November 9, 2021, the master issued a Report and Recommendation advising the trial court of the parties' settlement of "all outstanding issues . . . which resolves all issues in this litigation." (Master's Report and Recommendation, 11/09/21, at 1, 4).

**B.**

On November 15, 2021, Attorney Winegrad filed a notice of attorney's charging lien seeking payment of Wife's outstanding legal fees of approximately $41,000. The trial court entered a final divorce decree on November 23, 2021, incorporating the parties' settlement agreement.

Approximately three months after entry of the divorce decree, on March 4, 2022, Attorney Winegrad filed a petition to intervene seeking to join the parties' divorce action for purposes of enforcing the charging lien. Wife retained new counsel and she and Husband filed responses to the petition. On May 13, 2022, the trial court entered an order allowing Attorney Winegrad to intervene and she filed a petition for special relief to enforce the charging lien. Wife filed an application for reconsideration of the order permitting intervention, which the trial court granted.

The trial court held argument on the intervention issue on August 12, 2022, where Wife took the position that Attorney Winegrad's petition was untimely and there were other means of recovering the disputed legal fees. Attorney Winegrad countered that the equitable distribution portion of the divorce action remained open after the divorce decree was entered, with monies still due to Wife from Husband. The trial court ruled that the petition to intervene was legitimate and granted it. (**See** N.T. Hearing, 8/12/22, at 14).

The court then heard testimony on the underlying motion for enforcement of the charging lien wherein Wife read into the record a portion of the retainer agreement she executed in February of 2020 with Attorney Winegrad's law firm agreeing that any unpaid balance for legal fees constitutes an equitable charging lien in the firm's favor on any assets generated on Wife's behalf, thereby authorizing the firm to deduct the balance owed to it from any funds payable to her deposited in the firm's trust account. (***See id.*** at 16).

On November 3, 2022, the trial court entered an order dismissing Wife's challenge to Attorney Winegrad's intervenor status. It also granted Attorney Winegrad's petition to enforce the charging lien and directed that the lien be enforced against Wife's share of the marital assets awarded to her in equitable distribution which had not taken place. It also ordered Wife to pay Husband's legal fees relative to the petition to intervene. Wife timely appealed[1] and she and the trial court complied with Rule 1925. ***See*** Pa.R.A.P. 1925(a)-(b).[2]

---

[1] "We review a trial court's decision whether to allow intervention for an abuse of discretion." ***Gleason v. Alfred I. Dupont Hosp. for Children***, 260 A.3d 256, 262 n.6 (Pa. Super. 2021) (citation omitted).

[2] Wife's 1925(b) statement only raised the following issues: "a. The trial court erred in granting Stephanie Winegrad's Petition to Intervene. b. The trial court erred in re-opening the final decree in divorce. c. The trial court erred in granting Stephanie H. Winegrad, Esquire's Petition for Special Relief to Enforce Attorney's Charging Lien."

**II.**

First, a short discussion of attorney charging liens is necessary. "The right of an attorney to a charging lien upon a fund in court or otherwise applicable for distribution on equitable principles, which his services primarily aided in producing and to which, by agreement with his client, he is to look for compensation, has long been recognized." ***Brandywine Sav. & Loan Ass'n v. Redevelopment Auth. of Chester Cnty.***, 514 A.2d 673, 674 (Pa. Cmwlth. 1986) (quoting **Harris's Appeal**, 186 A. 92, 94–95 (Pa.1936)).

> As a matter of law, Pennsylvania courts recognize the right of a lawyer to an attorney's lien. Pennsylvania law recognizes two kinds of attorneys' liens: a charging lien and a retaining lien. Charging liens are divided into two sub-categories: equitable charging liens and legal charging liens. An equitable charging lien gives a lawyer a right to be paid out of a fund in the control or possession of the court, which fund resulted from the skill and labor of the lawyer. Such payment may be applied only to the services provided in a particular case. A legal charging lien applies to funds of a client in the lawyer's possession which may be applied to all outstanding debts of the client owed to the lawyer. A retaining lien permits a lawyer to retain money, papers or other property in the lawyer's possession to secure payment of costs and fees from the client.

*Ethical Considerations in Attorneys' Liens*, PA Eth. Op. 2006–300(PBA), 2006 WL 4590880, at *1 (footnotes omitted); ***see also Smyth v. Fid. & Deposit Co. of Maryland***, 192 A. 640 (Pa. 1937). Because here the payment of the lien is sought from a fund that resulted from an attorney's representation, the lien being enforced in this case is an equitable charging lien.

In **Austin v. Thyssenkrupp Elevator Corp.**, 254 A.3d 760, 764–65 (Pa. Super. 2021), we recently explained the origin of the attorney's charging lien, stating:

> The charging lien, originally, was defined to be the right of an attorney at law to recover compensation for his services from a fund recovered by his aid, and also the right to be protected by the court to the end that such recovery might be effected. Unlike the retaining lien, the charging lien does not depend upon possession, but upon the favor of the court in protecting attorneys, as its own officers, by taking care, *ex oequo et Bono*, (according to the right and good) that a party should not run away with the fruits of the cause without satisfying the legal demands of the attorney by whose industry those fruits were obtained.

*Id.* at 766 (Pa. Super. 2021) (quoting from **Appeal of Harris**, 186 A. 92, 95 (Pa. 1936) (italics in original)); **see also Brandywine Sav. & Loan Ass'n v. Redevelopment Auth. Of Chester Cnty.**, 514 A.2d 673, 674 (Pa. Cmwlth. (1986). The imposition of a charging lien is based upon the interest of the courts "in protecting attorneys, as its own officers," and in assuring that a party "not run away with the fruits [of a lawsuit] without satisfying the legal demands of the attorney by whose industry those fruits were obtained." **Johnson v. Stein**, 385 A.2d 514, 516 (Pa. Super. 1978) (quoting **Harris's Appeal**, 186 A. at 95).

To establish entitlement to an attorney's charging lien, counsel must demonstrate: "(1) that there is a fund in court or otherwise applicable for distribution on equitable principles, (2) that the services of the attorney operated substantially or primarily to secure the fund out of which he seeks to be paid, (3) that it was agreed that counsel look to the fund rather than the

- 7 -

client for his compensation, (4) that the lien claimed is limited to costs, fees or other disbursements incurred in the litigation by which the fund was raised and (5) that there are equitable considerations which necessitate the recognition and application of the charging lien." **Austin**, **supra** at 764–65; **see also Recht v. Urban Development Authority of Clairton**, 168 A.2d 134 (Pa.1961).

## III.

The underlying issue in this case is not whether Attorney Winegrad has an attorney's charging lien, but whether she used the proper procedure to enforce it. Although Wife claims that the petition to intervene was improper and states that other procedures can be used to enforce the lien, she fails to set forth what those procedures are. Unfortunately, the Rules of Civil Procedure also do not provide for a method to collect such liens and the case law is lacking.[3]

## A.

Initially, we agree with Wife that the trial court erred in granting Attorney Winegrad's petition to intervene because it was not filed during the pendency of the action. Pennsylvania Rule of Civil Procedure 2327 governs

---

[3] In addressing the nature of attorney liens, the trial court cites to exhaustive and excellent survey by Rebecca Hatch Esq., "*Use of Charging Liens on Marital Assets or Fees and Expenses Incurred in Obtaining Judgments for Clients in Divorce Proceedings*", 163 Am. Jur. Proof of Facts 3d 137.

intervenor status and provides in pertinent part: "At any time during the **pendency** of an action, a person not a party thereto shall be permitted to intervene therein if . . . (2) such person is so situated as to be adversely affected by a distribution or other disposition of property in the custody of the court or of an officer thereof; or . . . (4) the determination of such action may affect any legally enforceable interest of such person whether or not such person may be bound by a judgment in the action." Pa.R.C.P. 2327(2), (4) (emphasis added).

"To petition the court to intervene after a matter has been finally resolved is not allowed by our Rules of Civil Procedure. It is only during the pendency of an action that the court may allow intervention." ***U.S. Bank Nat'l Ass'n for Pennsylvania Hous. Fin. Agency v. Watters***, 163 A.3d 1019, 1027 (Pa. Super. 2017) (citing Rule 2327). "An action is pending from its commencement to its final determination on appeal, or until the time for appeal has expired." ***M.E.V. v. R.D.V.***, 57 A.3d 126, 129 (Pa. Super. 2012) (citation omitted). Additionally, "[a]n action is 'pending', according to Black's Law Dictionary (5th Ed.), when it is: begun, but not yet completed; during; before the conclusion of; prior to the completion of; unsettled; undetermined; in process of settlement or adjustment. Thus, an action or suit is 'pending' from its inception until the rendition of final judgment." ***U.S. Bank***, ***supra*** at 1027.

In this case, the petition to intervene was not filed during the pendency of the action because the final divorce decree was entered on November 23, 2021, and Attorney Winegrad's petition was filed in March of 2022 — when the divorce action was no longer pending, making it untimely. *See* Pa.R.A.P. 341(b)(1) (stating a final order is an order that disposes of all claims and of all parties); *Fried v. Fried*, 501 A.2d 211, 215 (Pa. 1985) (issues in divorce are reviewable after entry of divorce decree and resolution of all economic issues.)[4] Because Attorney Winegrad did not seek to intervene until after the divorce action was no longer pending, the trial court acted improperly in granting her application to intervene.[5]

_____

[4] We do not find this Court's unpublished decision in *Sweeney v. Sweeney*, 2019 WL 3916631 (Pa. Super. filed Aug. 19, 2019), addressed by the parties and the trial court, persuasive legal authority in this case. First, the *Sweeney* Court found all issues raised by the appellant waived for failure to comply with Rule 1925(b) and several other procedural rules. Second, although the Court briefly addressed in a footnote the timeliness of a petition seeking an attorney's charging lien, it did not analyze the timeliness of the petition to intervene or mention controlling Rule 2327. *See id.* at *6 n.6.

[5] Insofar as Attorney Winegrad points to the trial court's signing of a QDRO in March of 2023 as evidencing that the parties' divorce action remained pending when she filed for intervention, we disagree. (*See* Winegrad's Brief, at 7, 11). "A QDRO is a type of domestic relations order that creates or recognizes an alternate payee's right to, or assigns to an alternate payee the right to, a portion of the benefits payable with respect to a participant under a [retirement] plan." *Jago v. Jago*, 217 A.3d 289, 293 (Pa. Super. 2019) (citation omitted). However, QDROs are merely procedural devices which are adjunct to entry of divorce decrees and implement provisions of the decrees. *See id.* at 296-297. Thus, in the instant case, although the terms of the final divorce decree were later implemented through issuance of a QDRO, this was merely a ministerial procedural step to effectuate the terms of the parties'
*(Footnote Continued Next Page)*

**B**.

However, that does not end the matter. The question then becomes even if intervention was improper, does Attorney Winegrad still have a right to recover her charging lien at the same number and term of the divorce action by giving notice to all parties of the lien before the final divorce decree was entered, and then, to see recovery of those funds through a petition for special relief in that action.

As the trial court points out, a petition to intervene is not required in order to preserve the right to assert and/or litigate an attorney's or other professionals' charging lien. *See Walker v. Pennsylvania Department of Corrections*, 828 Fed. Appx. 118 (3rd Cir. Pa. 2020) (written notice of charging lien was sufficient to initiate claim; no petition to intervene filed); *Austin*, *supra* (no intervention; no separate civil case; attorney filed a motion to enforce charging lien and we reversed trial court's decision to deny the motion). As long as notice of the lien is given before the case goes to final judgment, the lien is perfected against any person who, at the time notice of intent to claim a lien is given, holds monies or property that could satisfy any judgment entered to satisfy the lien.

---

already settled agreement. The parties' divorce action itself had been fully resolved at the time Attorney Winegrad filed for intervention and was not "pending" within the meaning of Rule 2327. Accordingly, we reverse the trial court's order granting her intervenor status.

- 11 -

In this case, notice was given before the final divorce decree was entered and before any funds were distributed to Wife. However, the filing of a notice of an attorney's lien, like notice of other liens, merely places others on notice that the attorney claims an interest in the funds subject to the lien. It is not a judgment nor does it commence a proceeding that can result in a judgment. The attorney seeking such a judgment must take action to enforce that lien by establishing the five factors laid out in **Austin** as to why he or she is entitled to those fees as well as the reasonableness of the fees.

Attorney Winegrad filed a petition for special relief to enforce attorney's charging lien which, after a hearing, the trial court held that the **Austin** factors were met because: "(1) there was a significant distribution due to Wife; (2) Attorney Winegrad's services clearly operated to secure the fund out of which she seeks to be paid; (3) the written fee agreement explicitly provides consent for the Attorney's charging Lien; (4) the lien claimed is strictly for attorney's fees and costs to prosecute the action; and (5) notice of the Charging Lien was filed and provided to [Wife] and all counsel during the pendency of the action. (**See** Order, 11/3/22, at 2, n. 2)." (Trial Ct. 1925a Op., at 27).

We agree with the trial court that use of the petition for special relief was available to enforce the attorney's lien as ancillary to the divorce action. In was in that action that the fund against which the attorney seeks to collect was created; it allows the trial judge, who is in the best position, to address whether the **Austin** factors have been met as well as the amount of

reasonable attorney's fees; and allows the entitlement to funds be settled and the distribution of funds to occur. This procedure assures that a party "not run away with the fruits [of a lawsuit] without satisfying the legal demands of the attorney by whose industry those fruits were obtained." ***Johnson***, ***supra*** at 516. As the trial court explained, if the petition for special relief were denied: "Wife would have been able to alienate the funds from which she agreed to allow Attorney Winegrad to collect her defaulted obligation. Attorney Winegrad could then have lost the ability to recoup any of the fees and expenses she incurred in defending Wife's divorce litigation notwithstanding (a) all of the work she put into it and (b) Wife's insistence upon continuing with Attorney Winegrad's representation despite the fact that Wife was refusing to pay her." (Trial Ct .1925a Op., at 28).

Accordingly, for the foregoing reasons, we affirm in part and vacate in part the trial court's November 3, 2022 order. We reverse the trial court's order granting Attorney Winegrad's intervenor status; however, we affirm the court's order granting Attorney Winegrad's petition for special relief to enforce attorney's charging lien.

Order affirmed in part and reversed in part. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>8/16/2023</u>